### STATE OF LOUISIANA *v.* JAMES S. GREEN et al.

In an indictment for an assault with *intent to commit* an offence, the same particularity of averment is not necessary, that is required in indictments for the *commission* of an offence.

In the prosecution of two or more, under an indictment, charging an intent to commit murder, it is immaterial which makes the assault, or gives the blow, if it is inflicted with the intent charged: all concurring in that intent, the crime is committed by all.

It is not a sufficient ground for a new trial, that the judge, when the jury returned into court without having agreed on their verdict, instructed them a second time on the evidence, as to matters about which they had made no inquiry, and on the law, as to points on which they had stated neither doubt nor difficulty.

In summing up the testimony in a criminal case, it is legitimate for the judge to present his views of conflicting evidence, and to advert to such collateral circumstances, which are proved, as may have a favorable or unfavorable bearing on the issue.

The Supreme Court disapproved of the district court expressing to the jury the determination to keep it empannelled, until a verdict was found.

APPEAL from the First District Court of New Orleans. *Larue*, J.  *W. A. Elmore*, for the State. By the court: (*Slidell*, J., absent.)

PRESTON, J. This case having been tried *ex parte*, we have kept it under advisement longer than usual, being unaided by argument or authority, on behalf of the State. From the best examination we have been able to give the case, we have come to the conclusion, that the appeal ought not to prevail.

The indictment charges that the prisoner, with two other persons, made an assault upon one *Michael Hughes*, and with a dangerous weapon, called a colt, inflicted many blows upon him, with intent to commit the crime of murder. The statute prescribes, that whoever shall assault another, with intent to commit murder, shall, on conviction thereof, be imprisoned at hard labor, not exceeding two years.

A leading ground assigned in arrest of judgment is, "that the indictment is uncertain in this, that it charges an assault or offence committed jointly by three individuals, and with one single weapon, without setting forth which of the individuals used the weapon, or committed the assault with the weapon, with the intent to murder."

In indictments for this offence, the intent forms the gist of the offence, and must be specifically proved. *State* v. *Bill*, 3 Harrington, 571. In the prosecution of two or more for the offence, it is immaterial which makes the assault, or gives the blow. If it is inflicted with the intent charged, all concurring in that intent, the crime is committed by all. Had all been convicted under the present indictment, because of the guilty intent of all, although the blow was given by but one, the judgment could not have been arrested. Much less can it be arrested, as but one of the accused was found guilty. The jury must have been satisfied that the prisoner they convicted, made the assault and gave the blow with the guilty intent to commit the crime of murder, as they acquitted the others.

It is further to be observed, that the 24th section of the act of 1805, under which the indictment was found, does not require the use of any weapon, but only an assault with a murderous intent. If three set upon one with a murderous intent, and an assault be given in pursuance thereof, it is the act of all, and may well be described as the act of all, the intention of all concurring in the great ingredient of the crime.

Moreover, it is settled by authority, that in an assault with intent to commit an offence, the same particularity of averment is not necessary, as is required in indictments for the commission of the offence itself. And it has been expressly held, that in an indictment for an assault with intent to murder, it is not necessary to state the instrument or means made use of by the assailant, to effectuate the murderous intent, though this would be necessary in a prosecution for murder. *State* v. *Dent*, 3 Gill and John. Rep. 8. Still we would recommend that in all cases, as in the present, the means used should be accurately stated; but as the intent constitutes the crime, if manifested by an assault, it is immaterial, where it is committed by three persons, which uses the weapon or means manifesting that intent, and therefore it is not necessary to state by which of the three it was used.

A jury having been occupied a whole day on the trial of this case, and kept confined all night in deliberating upon their verdict, were brought into court the next day, and declared their inability to agree. The judge thereupon, without being requested by the jury or counsel, made an elaborate address to the jury, supposed by the counsel of the prisoner to be very hostile to their client, and announced his inflexible determination, that they should be kept together until the prisoner was found guilty, or acquitted. The substance of his address was published in several of the daily gazettes, and is incorporated in a bill of exceptions, and presented as grounds for remanding the case for a new trial, with directions to the judge, to abstain from such remarks to the jury, and not to force a verdict, by keeping the jury together until it is rendered.

STATE
*v.*
GREEN.

Much complaint has been made, that the judge made these remarks, not at the appropriate time for charging the jury, upon the close of the arguments for and against the prosecution, but after they had been engaged a whole night in deliberation, and also without the request of the jury or counsel. But the same thing was done in the case of *The Commonwealth of Massachusetts* against *Snelling*, 15 Pick Rep. 321. And it was held by the Supreme Court of the State, that where, on the trial of an indictment, the jury returned into court without having agreed, and the judge instructed them a second time on the evidence, as to matters about which they had made no inquiries, and had stated no difficulties or doubts as to the law, this was not a sufficient ground for granting a new trial.

We have carefully examined the reports of the remarks of the judge to the jury, which are made parts of the bill of exceptions. His warm appeals to the jury on the notoriously vicious state of our society, in relation to dangerous assaults and personal violence, were intended to justify the severe course he adopted, of keeping the jury together, until a verdict of conviction or an acquittal was rendered. It afforded powerful reasons for a self-sacrificing and rigorous performance of duty by the jury, as well as by the court. Such remarks are constantly made by judges sitting upon criminal trials, sometimes mildly, sometimes with strong feelings. Although we would recommend mildness in this respect, on all occasions, we cannot say that the judge, in expressing himself strongly on this matter of public interest, though not at issue in the case, committed an error fatal to the verdict and judgment against the prisoner.

We have not been able to approve of the expressed determination of the court to keep the jury empannelled until a verdict was rendered, or the severe rigor sometimes exercised towards disagreeing juries, in this respect. The frequency of their disagreement is undoubtedly a great evil, and perhaps would justify a constitutional or legislative provision for the verdict of a majority. But if juries are honestly unable to agree, they should not be forced, by physical means or suffering, to surrender their judgment in the most serious matters of life. But the course pursued in this respect on criminal trials, has always been regarded as a matter within the discretion of the court, and not as giving rise to an error, affecting the results of the trial.

The emphatic expressions of the district judge, concerning the necessity of the finding of a verdict for or against the prisoner, must not be isolated from the charge, of which they are a part, nor separated from the connection in which were used, to wit: a further and more deliberate consideration of the case; for which purpose, the judge thought himself not bound to heed the claims of the jury to be discharged, but to direct them still to be kept in confinement. The bill of exceptions purports to give the charge substantially. The reports of the proceedings extracted from the newspapers cannot be considered as going further; and we are bound to hold the strong language of the judge, as admonitions, to the jurors, of the sacredness and importance of their duties, not as attempting to exercise an undue influence upon their rights as jurors, or their judgments and consciences as men; and we cannot hold that its tendency was to coerce, but to quicken their intelligence, and sense of their obligations to give true deliverance on the evidence before them.

The views of the judge, in commenting upon the testimony, were unfavorable to the prisoner. After carefully perusing his remarks, we are unable to say, that he gave more weight to the testimony against him than it deserved, or that

he improperly biassed the jury. It is urged, that his comments are liable to the animadversions of this court, on the charge of the judge in the case of *The State* v. *Chandler*, 5 Ann. 490, and that case is relied upon to show, that we should reverse the judgment, on account of the hostile remarks.

In the charge of the court in the case of *Chandler*, the judge used such remarks as these : "I have rarely known a case, in which the crime of murder was more clearly brought home to the prisoner, and I cannot think you can entertain any reasonable doubt of his guilt." We thought such strong convictions of the guilt of the accused, coming with all the weight of authority from the judge in whom they reposed so much confidence, might impair the right of the accused, guaranteed by the Constitution, to a trial by an impartial jury. We think so still, but find nothing in the remarks of the court in this case at all, to compare to what was said in *Chandler's* case. We find no expression of the conviction of the court that the prisoner was guilty, or that the jury could not entertain a doubt of it, and must therefore necessarily find him so. In *Chandler's* case we recognized the right of the court, to express its opinion as to the weight of evidence, and comment upon it as much as deemed necessary for the course of justice. We do not find in this case an expression of opinion by the court, even as to the weight of evidence in relation to the great fact charged, an intent to commit murder. To say the most, we only find strong comments on the evidence, which the court evidently thought the course of justice required.

With regard to the character of the accused, not the offence charged against him, we find these strong expressions, which have been most severely criticised : "It has been proved that *James Green*, one of the prisoners at the bar, is a man who lives by depredations upon the community ; that he is a professional thief, and in addition to this, I am satisfied that he is a desperado, whose liberty is inconsistent with safety to society; that he is a man, from whose character it is natural to suppose, when he is dragged before justice, that he will sustain his cause by subornation of perjury."

The judge was summing up and comparing the testimony of six witnesses, who had been examined on the trial, four of whom were called on behalf of the prosecution, and rendered it certain, that a blow of an almost fatal character had been given by the accused to an officer of the police. They were positively contradicted by two witnesses, called on behalf of the accused. The court was led to the conclusion, that the evidence was irreconcilably conflicting, and therefore, on the one side or the other, must be false. He therefore referred to the character of the accused, as he understood the testimony in relation to it, and the motives which might have actuated him, to show the greater probability, in weighing the whole, that his witnesses might have been suborned, or were false, than those on behalf of the State.

In summing up the testimony in a criminal case, it is certainly a legitimate exercise of duty by the court, to present his views of conflicting evidence, and advert to such collateral circumstances which are proved, as may have a favorable or unfavorable bearing upon the principal evidence in the case. We cannot therefore say, that there was any error in the remarks of the judge, in relation to the character of the accused, as having a bearing upon the testimony of his witnesses.

The record shows, that a police officer came near losing his life in the discharge of his public duty; and the state of our society no doubt justified the animadversions of the district judge. And although we would recommend

STATE
*v.*
GREEN.

patience and mildness in the performance of our judicial duties, however painful or disagreeable the circumstances in which we may be placed, yet we cannot say the occasion did not require the rigor exercised, and apparently strong feelings manifested on this trial.

The judgment of the district court is affirmed, with costs.