(65 South. 756)

No. 20562.

STATE v. SEALS.

(June 8, 1914. Rehearing Denied June 29, 1914.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 301*) — PLEA — WITHDRAWAL.

Where there was a reservation of the right to withdraw a plea of not guilty and to file a

motion to quash, the subsequent filing of the motion did not ipso facto operate a withdrawal of the plea, especially when the accused went to trial on the merits, without objection, on the same day.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 687; Dec. Dig. § 301.*]

2. CRIMINAL LAW (§ 1155*)—JURY—FAILURE TO AGREE—DISCHARGE.

The question of the discharge of a jury because of their inability to agree on a verdict is one within the sound discretion of the court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3056, 3060; Dec. Dig. § 1155.*]

3. CRIMINAL LAW (§ 865*)—JURY—COERCION OF VERDICT.

Remarks by the trial judge to the jury that they should agree if possible, and thereby save expense to the parish, and that he would adjourn court until the next morning, if the jury did not speedily agree on a verdict, do not make out a case of coercion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2069; Dec. Dig. § 865.*]

4. CRIMINAL LAW (§ 1038*) — APPEAL — INSTRUCTIONS — OBJECTIONS — NECESSITY — SELF-DEFENSE.

Instructions to the jury should be taken as a whole. The accused cannot reasonably complain of instructions which recognized his right of self-defense to the extent of repelling force by force as far as necessary, under the circumstances as they reasonably appeared to him at the time. If the accused desired more specific instructions, he should have applied for them.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2646; Dec. Dig. § 1038.*]

Appeal from Twenty-Seventh Judicial District Court, Parish of Ascension; Chas. T. Wortham, Judge.

Louis Seals was convicted of murder, and appeals. Affirmed.

Pugh & Lemann, of Donaldsonville, for appellant. R. G. Pleasant, Atty. Gen., and Philip H. Gilbert, Dist. Atty., of Napoleonville (G. A. Gondran, of New Orleans, and John Marks, of Napoleonville, of counsel), for the State.

LAND, J. The defendant was indicted for murder, found guilty without capital punishment, and sentenced to life imprisonment in the penitentiary.

Defendant has appealed, and relies for reversal on several bills of exception.

Defendant moved to quash the indictment on the ground that the grand jury returning the same were selected and drawn by the jury commission solely from the supplemental list, and not from the venire of 300 names, and that the said commission did not strike from the general venire list the names of all those who had served and were disqualified from jury service. The only evidence offered was the procès verbal of the selection of the venire, and of the grand jurors. This procès verbal seemed to the trial judge, and seems to us, to be regular. From the bare circumstance that the names of the grand jurors selected appear on the supplemental list, counsel for defendant infer that they were drawn from that list, and not from the general venire. The procès verbal shows that the general venire list was completed before the grand jurors were selected, and the commission surely had the right to select, as they pleased, from the whole list.

Even if the selection had been made from the supplemental list, no fraud or actual injury to the accused has been shown. State v. Johnson, 116 La. 863, 41 South. 117.

Defendant's motion in arrest of judgment is based on the contention that, the plea of not guilty having been withdrawn, the case was subsequently tried without issue joined.

The minute entries show that the accused was duly arraigned and pleaded "not guilty," and his case was fixed for trial for March 4, 1914, and that "said plea was made with the right to withdraw same and file a motion to quash." On March 4, 1914, a motion to quash was filed, tried, and overruled, and on the same day the case was taken up for trial, and tried before the jury, without objection on the part of the accused, and the accused was found guilty without capital punishment.

[1] The record shows that the reserved right to withdraw the plea of not guilty was

never exercised. The contention that the mere filing of the motion to quash operated as a withdrawal of the plea of not guilty is without merit. See State v. Gregg, 123 La. 610, 49 South. 211.

In the recent case of Garland v. State of Washington, 232 U. S. 642, 34 Sup. Ct. 456, 58 L. Ed. 772, the Supreme Court of the United States, reversing Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097, applied the doctrine of waiver to the case of a second information, on which the accused went to trial, without objection that issue had not been joined therein by plea of not guilty. The court said:

"The object of arraignment, being to inform the accused of the charge against him and obtain an answer from him, was fully subserved in this case, for the accused had taken objections to the second information, and was put to trial before a jury upon that information in all respects as though he had entered a * * * plea of not guilty."

The court unanimously approved the views expressed in the dissenting opinion of Mr. Justice Peckham in the Crain Case, to the effect that a waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had interposed, and the accused made no objection until after verdict.

The Garland Case indicates that the day for the reversal of verdicts on mere technicalities and informalities in criminal proceedings has passed, and that our highest court has commenced applying the rule of reason to criminal trials.

In the case at bar there was an arraignment and plea, which was never withdrawn, and on which the defendant went to trial without objection. If the defendant ever had the right to withdraw the plea, he never exercised the privilege.

[2, 3] The minutes recite that the jury retired to deliberate—

"at 15 minutes to 10, and, the accused with counsel being present in court, the court called in the jury and charged them, unless they agreed upon a verdict by 15 minutes after 10, that he would adjourn court until to-morrow morning at 10 o'clock. To which charge counsel for accused objected and reserved a bill."

"The said jury came into court, and, the accused with counsel being present in court, rendered the following verdict: 'Guilty, without capital punishment.'"

In the bill of exception the trial judge gave the following version of the incident:

"At 9:45, the court sent for the jury and asked them what prospect there was of their reaching a verdict that night. The foreman informed the court that it looked as if they would not be able to agree.

"The court said: 'Gentlemen you have heard all the evidence in this case, and you should reach a verdict if possible. You should not put the parish to the expense of another trial if it is possible for you to agree.'

"Court will adjourn for to-day at 15 minutes after 10. If before that time you have reached a verdict, make it known to the sheriff.

"After about 10 minutes the jury returned into court and rendered a verdict of 'Guilty without capital punishment.'"

We do not think that the remarks of the court amounted to coercion. It was the duty of the jury to agree if possible, and by so doing save unnecessary public expense. See State v. Dudoussat, 47 La. Ann. 998, 999, 17 South. 685. At the common law, which we have adopted in criminal matters, jurors were starved and carted about to compel them to agree on a verdict. This drastic practice has become obsolete, and the modern doctrine is that jurors should not be forced, by physical means of suffering, to surrender their judgment. State v. Green, 7 La. Ann. 520. But the question of the discharge of a hung jury is one within the discretion of the court, Id. In State v. Fuselier, 51 La. Ann. 1317, 1504, 26 South. 264, 408, the court cited Proffatt on Jury Trial, § 482, quoting from the latter as follows:

"It is well settled that the court has in itself to decide when to discharge the jury. The exercise of such discretion is not ordinarily subject to review."

The court further said:

"It would be different if pressure had been brought to 'produce' an agreement. This was not the case. We are not informed that they did not have 'meat, drink, and light,' and the usual attention due to jurors. The restraint to which jurors are subject is in the interest of law and order."

There was nothing coercive in the language of the trial judge on the occasion in question.

[4] In regard to the exception to the charge of the court, both the district attorney and the trial judge, certify that no evidence was made part of the bill when it was reserved, but they do not deny that the accused offered evidence tending to prove self-defense as stated in the bill.

The charge reads as follows:

"The taking of life in self-defense, or in defense of personal rights, is only excused when it is necessary to repel an unlawful attack, which threatens death or serious bodily harm; and then life is to be taken only as a last extremity or resort. The defense must be no more than is rendered necessary by the character of the attack made. The one attacked may repel force with force, but the defense must not be disproportionate to the attack. I cannot touch at all on the facts of the case, but I can give you this as an example: If an unarmed child attacks a strong man, the man would never be justified in picking up a chair and knocking the child down.

"The accused who pleads self-defense is to be judged by the circumstances as they reasonably appeared to him at the time. Sitting here as we are, there is nothing to prevent us from exercising clear and cool judgment, but we must remember that when a sudden state of circumstances arises a man cannot be expected to exercise calm and deliberate judgment, and therefore the law says he must be judged by the facts and circumstances as they reasonably appeared to him at the time.

"Gentlemen, the law is, furthermore, so tender of human life that it requires one who is attacked to retreat before taking life; but this applies only in those cases where it would be safe to retreat. * * * The most modern rule is, gentlemen, that when a man is about his own business, and where he has an absolute right to be, his obligation to retreat is very slight."

Defendant's counsel objected to that portion of the charge stating that life is to be taken only as a last extremity or resort as too broad, and the reference to the child and the man as not applicable to the facts of the case.

As shown by the bill of exception the accused relied on self-defense, and claimed that the evidence tended to show that he, while sitting on a log, was suddenly assailed in a violent manner by a much younger man, and that he shot his assailant to protect himself. The defendant was entitled to a charge on the law of self-defense. State v. Garic, 35 La. Ann. 972.

Counsel for the accused contend that the first sentence of the charge supra should have been qualified by adding that it was the duty of the jury to take into consideration the circumstances of the case. It does not appear, however, that the accused asked any special instructions to that effect.

Where abstract principles are charged, it seems that the onus is on the accused to demand of the court specific instructions to the jury as to the application of the law of self-defense to the facts of the case. State v. De Rance, 34 La. Ann. 190, 191, 44 Am. Dec. 426, citing State v. Bogain, 12 La. Ann. 264. It may be that the words "last extremity or resort" in themselves are too broad, but the charge as a whole recognized the right of the accused to repel force by force as far as might be necessary for his own protection, against death or serious bodily harm, under the circumstances as they reasonably appeared to him at the time. The judge charged that "the defense must not be disproportionate to the attack," and illustrated his meaning by the example of a child assaulting a strong man. The judge in his per curiam said:

"The court purposely selected an illustration as far removed from the facts of the case on trial as possible, because to select an illustration on all fours with the facts of the case being tried would be to direct a verdict of the jury."

We see no errors in the charge prejudicial to the accused. It would be well, however, for trial judges to charge the law of self-

defense as laid down in State v. Chandler, 5 La. Ann. 490, 52 Am. Dec. 599.

The motion for a new trial and in arrest involve no new matter.

Judgment affirmed.