SOMMERYILLE, J.
Defendant appeals from conviction of murder without capital punishment, and relies upon two bills of exceptions for a reversal of the judgment and sentence.
[1] The first bill of exceptions was reserved to the ruling of the court overruling the objection made by defendant to go to trial without having compulsory process for obtaining witnesses in his favor. It appears that he had had subpoenas issued for two witnesses named Curtis Franklin and Lawson Flowers, upon which the sheriff made the following returns:
“Received summons for Curtis Franklin in office on July 16, 1918, and went to H. R. Rat-cliff first and asked him or tne whereabouts of Franklin; next I went to and asked Arthur Franklin, then I asked a Mr. King, asked Mrs. Hall, one of the Cruse boys, and was informed by all the above named that Curtis Franklin was a deserter from the army, and in hiding. I am unable after diligent search to find him; that they did not know where he was at. Curtis A. Franklin, was inducted into the army on the 18th day of September, 1917.”
A similar return was made on the subpoena issued for Lawson Flowers.
The case was called for trial, and defendant placed the deputy sheriff, L. D. Frazer, on the witness stand, and he testified, that he had made the returns referred to and that he had not been able to find the witnesses; that he had inquired of the several persons named in the returns, and of others in the vicinity of Jena, in La Salle parish; and that he had not been able to find them. He further testified that he had not been informed as to the whereabouts of the said two witnesses, except that they had been inducted into the army of the United States and had deserted therefrom. Defendant also called four other witnesses who testified to the effect that the absent witnesses sought were deserters from the army, and that they had been in hiding in the rear of a certain field in La Salle parish; but that they, had not been seen or heard of them for more than four weeks before the day of trial; and that they did not know the then whereabouts of said witnesses.
There appears to have been some evidence taken on the point on behalf of the state, but that evidence is not made part of the bill of exceptions, and it is not in the transcript:
The trial judge was of the opinion that the defendant had had the process of the court for obtaining the witnesses sought, and refused to cause other subpcenas to issue before proceeding with the trial.
Defendant and his witnesses do not say that the addresses, or hiding place, of the absent witnesses, was given by him to the sheriff, or that the latter knew where it was. The deputy sheriff appears to have been diligent in the discharge of his duties. The process of the court for obtaining the witnesses had been exercised, and the judge did not err in refusing to order other subpcenas to be issued.
[2] The second bill of exceptions was taken to the admission in evidence, from a witness by the name of Gant:
“That bloodhounds had trailed defendant from the scene of the killing, a distance of a quarter of a mile, and had bayed the defendant.”
The bill continues to recite:
“The witness Gant was then allowed to testify, and testified substantially that the bloodhound in question had taken the scent from a club stained with blood which had been found near the body of the deceased, and from this scent trailed a distance of a quarter of a mile, where this defendant then was, and there bayed him.” ’
*433 And the judge added the following per curiam to the bill:
“The court permitted the state, after laying the proper foundation, to show that bloodhounds were brought to the scene of the homicide, and that the hounds did trail the defendant from the scene of the homicide to his home where he was arrested. The case was purely circumstantial. The court being unable to locate a decision from the Supreme Court of this state, and counsel for the state and defendant were unable to cite the court a decision from the Supreme Court of this state, the court admitted the evidence on the authorities holding that such evidence was admissible.”
Reference to the 16 C. J. § 1095, shows that in the states of Illinois and Nebraska the evidence of the trailing of a bloodhound is not admissible; and that in the states of Alabama, Arkansas, Florida, Georgia, Kentucky, Mississippi, Missouri,.North Carolina, Ohio, Pennsylvania, South Carolina, and Texas the evidence is admissible.
The evidence attached to and forming part of the bill of exceptions shows that the requisite preliminary foundation had been laid for the introduction of testimony of the trailing by the bloodhound referred to in the case.
It was shown by the witness Gant, the owner of the dog, that he (the dog) was characterized by acuteness of scent and the power of discrimination; that he was trained, tested, and reliable in the tracking of human beings; that he was laid on the trail where the circumstances tended to show that the guilty party had been; and that he followed such scent or track to the defendant, who was at his home about a quarter of a mile from the scene of the murder. This preliminary foundation was strengthened by the testimony of Gant as to his own worthiness as a witness and trainer of bloodhounds; and as to the pedigree and purity of the blood of the animal, which tracked defendant. It was further shown that defendant had the fullest opportunity, by cross-examination, to inquire into the breeding and testing of the dog, and to all the circumstances and details of the hunt, that he might lead the jury to believe, if he could, either that the dog was unreliable or unskilled, or that he so acted on the trail as to deprive the evidence of incriminating value.
“While the practice of employing bloodhounds in the pursuit of felons and fugitives has existed for a considerable length of time, the subject of ‘bloodhound testimony’ is of comparatively recent origin, and the authorities bearing on its admissibility are somewhat in conflict.” In the majority of the cases to which we have been referred, such evidence was received.
It appears from the record in this case that other evidence was before the jury.
The following extract is taken from 8 R. O. L. par. 177:
“While there is some authority against the admissibility of so-called bloodhound evidence, the great weight of authority maintains the rule that testimony as to the trailing by bloodhounds of one charged with crime may be permitted to go to the jury for what it is worth as one of the circumstances which may tend to connect the defendant with the crime, when it is shown by some one having personal knowledge of the fact that the dog in question is of pure blood and of a stock characterized by acuteness of scent and power of discrimination, is itself possessed of these qualities, and has been trained or tested in their exercise in the tracking of human beings, and that the dog so trained and tested was laid on the trail, whether visible or not, concerning which testimony has been admitted, at the point where the circumstances tend clearly to show' that the guilty party had been, or upon a track which such circumstances indicate to have been made by him. But where there is a lack of preliminary proof as to the reliability of the hound and as, to his experience, evidence of his conduct in tracing a defendant should not be admitted. Such evidence may be deemed a circumstance to be considered, in connection with other proof, in determining the guilt or the innocence of the accused, but alone and unsupported it is insufficient • to sustain a conviction; there must be other and human testimony to convict. To discredit the evidence furnished by bloodhounds in trailing a criminal from the scene of *435 the crime, evidence is not admissible of the conduct of other dogs trained by the same trainer, which failed to keep a trail.”
The testimony of the witness Gant as to the tracking of defendant by the bloodhound in question was competent, and it was properly received.
The judgment appealed from is affirmed.
DAWKINS, X, takes no part.
O’NIELL, J., concurs in the decree.