(90 South. 385)

No. 24907.

## STATE v. DAVIS.

(Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law ☞409 — Foundation for admission as to ownership of shoes fitting into certain tracks held sufficient.**

In prosecution for murder, evidence by a deputy sheriff that defendant came up to witness and stopped, and, in a conversation freely and voluntarily had, admitted being the owner of shoes which fitted into certain tracks, *held* sufficient as a foundation for such admission.

2. **Criminal law ☞386 — Bloodhound evidence held admissible.**

In a prosecution for murder, evidence as to the tracking of defendant by bloodhounds *held* admissible.

3. **Criminal law ☞662(4) — Certificates of pedigree of bloodhounds held inadmissible.**

In a prosecution for murder, where defendant had been tracked by certain bloodhounds, the introduction in evidence, over defendant's objection, of certificates of the pedigree of the hounds, *held* error.

4. **Homicide ☞157(1), 158(1) — Proof of prior difficulties and threats by defendant held admissible.**

In murder prosecutions, proof of prior difficulties and of threats by defendant is admissible.

5. **Criminal law ☞351(10) — Attempts by defendant to intimidate witnesses held admissible.**

In prosecutions for murder, evidence of attempts by defendant to intimidate witnesses is admissible.

Appeal from Eighth Judicial District Court, Parish of Franklin; S. R. Holstein, Judge.

Mitchell Davis was convicted of murder, and he appeals. Verdict and sentence set aside, and case remanded.

Berry & Berry and W. H. Thompson, all of Winnsboro, for appellant.

A. V. Coco, Atty. Gen., and E. B. Moore, Dist. Atty., of Winnsboro (T. S. Walmsley, of New Orleans, of counsel), for the State.

BAKER, J. The defendant, having been convicted of murder without capital punishment and sentenced to hard labor for life, prosecutes this appeal.

The deceased, Bill King, was murdered by being shot as he was unsuspectingly going along the public road. The murderer was not seen; but the smoke from his gun was, and served to make known the spot where he stood when firing. The next day two bloodhounds, starting from this spot, went to the bed which the accused had occupied the night before, and when the accused, who was coming from a nearby field, was called, he came up and the dogs bayed him. When he got there the deputy sheriff asked him if the shoes he had on were the same he had worn the day before, and on answering that they were, the shoes were placed in the tracks left by the murderer and fitted exactly; their peculiarities being that they were run down at the heels and one of them had a broken part projecting over the sole at the toe.

Evidence of this admission as to the shoes having been made was objected to on the ground that the proper foundation for admitting in evidence proof of a confession had not been laid. The deputy sheriff testified as follows:

"Q. Were you present in the yard of Mr. Davis at the time that Mitchell Davis came through the fence into the yard?

"A. I was.

"Q. Did you meet him and have a conversation with him?

"A. I didn't exactly meet him, but when he stopped I had a conversation with him.

"Q. Was that conversation freely and voluntarily had on Mr. Davis' part?

"A. It was. * * *

"Q. State what conversation you had with him at that time."

[1] We do not see that any more laying of a foundation was necessary than this. The

circumstances indicate plainly that no threats were made or violence offered or inducement held out, but that, as the accused came up and stopped, the question was put to him, and that he freely and at once answered. If the learned counsel for the accused was doubtful as to whether, notwithstanding all appearances to the contrary, the confession might not have been free, but extorted or induced by promises, a full opportunity was offered for further development by questions.

When evidence of the performance of the bloodhounds was sought to be introduced, objection was made that bloodhound evidence was inadmissible, and that, moreover, the proper foundation for the admission of such evidence had not been laid by proof of the pedigree and training of the dogs and their ability to trail a human being by their sense of smell.

[2] The first of these objections was passed on adversely in the case of State v. King, 144 La. 430, 80 South. 615; and the second may be said to have been virtually passed on in that case, since the same evidence which was offered in this case was offered in it and was held sufficient.

[3] Not content, however, in the present case with said evidence, the prosecution sought to strengthen its case, or to give more weight to the bloodhound testimony, by the introduction in evidence, over the objection of the accused, of the same so-called certificates of the pedigree of the dogs, which in State v. Harrison, 149 La. 83, 88 South. 696, were held to be inadmissible and to have vitiated the verdict; and we find ourselves compelled in the present case to reach the same conclusion.

Mike Jenins, a witness for the state, having been asked whether some time before the murder there had been a difficulty between the accused and the deceased, and whether he had discussed it with the accused, objection was made on the ground of irrelevancy, and that the details of a prior difficulty could not be gone into. In answer to the question, the witness related the circumstances under which he met the defendant, and how they came to discuss the difficulty, and how during the discussion the defendant insisted that he see King and try to get him to leave the country. When asked to state, as nearly as he could, the exact words of Davis, he answered as follows:

"He told me to go see King, and tell him he wanted him to leave the country; that he didn't want him to come up that road; and if he did come up that road, he would kill him," etc.

The witness then goes on to relate how he had gone to King with the message, and found him in his field, and that—

"He had one of his legs—the one that he was shot in—stuck right straight back, and he was picking cotton on one knee. I says, 'It seems as though you are in pretty bad shape.'"

[4] Proof of a prior difficulty and of the delivery of said message, which was in the nature of a threat, was clearly admissible; and, since the witness gave none of the details of the prior difficulty, the question of the admissibility of these details does not arise. No objection was made to the witness describing the situation in which he found King and the condition he was in.

The accused, who was out on bond, having met the same witness, Mike Jenins, on his way to court the morning of the trial, told him "to be pretty G—— d—— certain that I didn't come into court and swear a G—— d—— lie like Marvin Herlong. He said (directing his remarks to Herlong), 'Didn't you do it?'"

[5] Evidence of an attempt to intimidate a witness is, of course, admissible. State v. Baden, 42 La. Ann. 295, 7 South. 582.

The numerous other bills of exception bear upon points which are not likely to arise up-

on another trial, and hence need not be considered.

The verdict and sentence are set aside, and the case is remanded for trial according to law.