LAND, J.
Under an indictment charging the defendant with murder, the jury returned a verdict of “guilty as charged without capital punishment,” and defendant was sentenced to the state penitentiary for the term of his natural life.
He has appealed and relies for the reversal of the verdict and sentence against him upon a number of bills of exceptions.
*301 Bill of Exception No. 1.
This is the second trial of defendant, the verdict and sentence having been set aside and the case remanded for a new trial in the case of State v. Davis, 149 La. 1009, 90 South. 385. A third motion to withdraw his plea of guilty in order to file a third motion to quash the indictment was made on April 24, 1922, on the second trial, similar motions to withdraw plea having been made on the first trial April 25, 1921, and June 21, 1921; on each occasion the request of defendant having been granted, and the motions subsequently filed by him overruled.
Defendant has waited for a year to file his third motion for withdrawal of plea, and it does not appear that the trial judge has clearly abused his discretion in such matters in refusing to grant defendant’s motion filed on the second trial. State v. Sandiford, 149 La. 933, 90 South. 261; State v. Gunn, 147 La. 382, 85 South. 44; State v. Gregg, 123 La. 610, 49 South. 211; State v. Boudreaux, 137 La. 227, 68 South. 422.
Bill of Exception No. 2.
A venire was drawn on March 8, 1922, to serve for the week beginning April 26, 1922. Defendant has filed a motion to quash the array for the following reasons:
(1) That the jury commission did not revise and supplement the jury list according to law, in that certain names appear thereon who were exempt and disqualified from jury service.
Under the statute of 1898 (No. 135), a venire is not to be quashed merely for irregularities or for noncompliance with the literal requirements of the law in the matter of selecting and summoning jurors, but only when fraud has been practiced, or some great wrong committed, in the selection and summoning of the jury, that would work irreparable injury. State v. Claxton, 129 La. 591, 56 South. 519; State v. Batson, 108 La. | 486, 32 South. 478; State v. Sheppard, 115 La. 942, 40 South. 363; State v. Sturgeon, 127 La. 459, 53 South. 703.
There is neither suggestion nor proof of fraud or injury in connection with these alleged irregularities on the part of the jury commission. That some of the jurors drawn are not qualified is not per se good ground for setting aside the panel.
That one of the witnesses to theffrawing and who signed the procés verbal was not competent in that he was charged with an offense against a town ordinance. Section 4 of the jury law, Act 135 of 1898, provides that the jury commission shall select 300 good and true men “in the presence of two' or more competent and disinterested' witnesses of lawful age, competent to read and write the English language and residents of the parish, who shall be summoned by the clerk for that purpose.”
It seems that R. A. Brown, one of the witnesses to the drawing, had been charged with the violation of an ordinance of the town of Winnsboro, La., for gambling, and that his case was on appeal to the district court.
Under section 1, of Act 157 of 1916, a competent witness in any proceeding, civil or criminal, is a person of proper understanding. The fact that a person may be charged with a crime, or may have been convicted of a crime, does not affect his competency under the general law of this state, although it may affect his credibility.
However, under section 4 of Act 135 of 1898 the competency of a witness to the drawing of a venire is specially defined by that section. He must be “competent to read and write the English language,” and must be “a resident of the parish.” There is no attack on this line. He must be also a “disinterested witness.”
There is no proof that any state charge was pending against the witness for investigation before the grand jury, or for trial before a petit jury in the district court of *304 Franklin parish. The trial of the charge for the violation of the city ordinance pending on appeal is necessarily before the district judge, and that such a charge is not a crime against the state is well established. No improper conduct at. the drawing of the venire is charged against this witness, and, under the facts of this particular case, he must be held to be a competent and disinterested witness within the meaning of the statute.
(3) That no written summons issued to the witnesses to be present at the drawing.
Even should a written summons be necessary, the mere omission to issue such summons could not possibly operate as a fraud against, or great wrong to the defendant. At best, it would be a harmless irregularity, as the statute in this respect is directory.
(4) That the jury commission discriminated in that no names of women were placed in the jury box.
Section 41 of Article 7 of the Constitution' of 1921 contains the proviso:
“That no' woman shall be drawn for jury service unless she shall have previously filed with the clerk of the district- court a written declaration of her desire to be subject to such service.”
It is presumed that the jury commission did its duty. In the absence of proof that any woman had filed her application with the clerk for jury duty, in Franklin parish, and that this -fact had been made known to the jury commission, the charge of discrimination against women in this case as to service on the jury is without the slightest foundation to support it.
Bill of Exception No. 3.
This bill relates to the refusal of a continuance on account of the absence of one of defendant’s witnesses. A subpoena issued for this witness on April 21, 1922. The residence of the witness was designated by the accused as Franklin parish. The sheriff’s return made on April 22 shows that the witness had been absent from his home in said parish since February 1, 1922. On Thursday, the fourth day of the special term of court at which defendant was tried, which began on Monday, April 24, the defendant made application to have a subpoena issued to Grant parish for the absent witness. The court ordered the subpoena to issue, but refused to delay the trial until a return could be had. The return of the sheriff of Grant parish shows diligent search to have been made for this witness there, and that he could not be found. Defendant’s counsel filed - no formal application for continuance, nor did he comply with section 1036 of the Revised Statutes, by making oath as to what it was expected to prove by the witness to be summoned from Grant parish.
Where defendant in his application for a continuance on the ground of the absence of a material witness, whom he knew did not reside in the parish, failed to make oath to the materiality of the testimony and obtain an order of court, as required by R. S. § 1036, the application was properly refused. State v. Lee, 130 La. 477, 58 South. 155.
The instant case is to be differentiated' from those cases where a defendant charged with a capital offense has done all that the law demands to entitle him to have his witnesses summoned. In such cases, it is only in the event of its being shown by the return of the sheriff that the witness could not be found at the address furnished by such defendant, or, having been found, could not, for some sufficient reason, be brought into court, that defendant can legally be called upon to make any other showing for a continuance, or can be forced to trial without his witnesses upon an admission by the state as to the testimony that tiie witness would give, if present, as a defendant would be *305 clearly entitled to have his witnesses brought in by compulsory process in such cases. State v. Curtis, 138 La. 911, 70 South. 878.
“Whether witnesses shall be required to attend from another parish is left by the statute to the discretion of the judge. Section 1036, Rev. St.” State v. Romero, 117 La. 1003, 42 South. 482.
The summons of a witness from other parishes is not a matter of right. The statute requires the applicant to state on oath what it is expected to prove by the witness, and the judge has the discretion to determine whether the attendance of the witness is indispensable to the trial. Rev. Stat. 1870, § 1036. Hence the mere placing on the clerk’s order book of directions to issue summonses is not due diligence in obtaining the attendance of witnesses. State v. Nix, 111 La. 812, 35 South. 917.
The trial judge in this case permitted the summoning of the witness from another parish as a matter of grace, but properly overruled any application for delay or continuance, as defendant had not shown due diligence by making the affidavit required by section 1036 of the Revised Statutes of 1870. Moreover, the testimony of the absent witness may not have been indispensable to the trial as required to be shown by said section by the affidavit of defendant.
Bill of Exception No. 4.
Defendant complains of the sustaining 6y the trial judge of certain challenges for cause made by the district attorney. The questions propounded by the “prosecuting officer to various jurors on their voir dire were:
“Are you prejudiced against convicting a man on circumstantial evidence?
“Have you any conscientious scruples against the infliction of the death penalty?”
The ruling of the trial judge in rejecting a juror who is challenged for cause, by the state, even if erroneous, affords no legal ground of complaint to the accused, as the law gives to the accused the right to object to an obnoxious juror, but not the right to select. State v. Thompson, 116 La. 829, 41 South. 107, citing numerous cases.
The objection was also made that the district attorney used the question as to whether a juror was conscientiously or religiously opposed to capital punishment, and the question as to whether a juror would convict on circumstantial evidence, merely as a subterfuge to challenge peremptorily those jurors whom the district attorney did not want on the jury. It is said that he did not plead for an infliction of the death penalty ; and that, when a tales juror was called whom the district attorney desired to serve on the jury, he acceptéd him without regard for the juror’s opposition to capital punishment, and without, regard for his lack of faith in circumstantial evidence.
 Section 14 of Act 135 of 1898, the jury law of this state, provides that—
“The state and the accused may, in all oases, challenge any number of jurors for good and sufficient cause.” (Italics ours.)
This provision, however, is not mandatory, but is addressed to the discretion of the prosecuting officer as to whether in the case of particular jurors he will lay the proper foundation for a challenge for cause. He may know already that the juror is not opposed to conviction because the penalty may be death, or because the evidence may be circumstantial.
The challenges of the state for cause are for the benefit of the state, and not for the benefit of the defendant who has no control whatever over the right to exercise such challenges by the prosecuting officer. Even if a challenge for cause by the state is improperly sustained by the trial judge, it affords no ground of complaint to the accused.
The defendant was found guilty as charg,ed without capital punishment. The evi *308 dence in the case was circumstantial. The acceptance therefore "of tales jurors by the state without regard for the juror’s opposition to capital punishment, and without regard for his lack of faith in circumstantial evidence, was more favorable than prejudicial to the accused. That there was no lack of faith in circumstantial evidence of the proper kind upon the part of any of the tales jurors accepted by the state is fully attested by. the verdict- returned in this case.
That a prosecuting officer has the right to challenge a juror for cause in a capital case upon the grounds above assigned must be conceded. We are at a loss to see how the exercise of such legal right can be termed a subterfuge. We are not prepared to hold that it is the mandatory duty of the state’s attorney to propound to each juror in a capital case questions as to his conscientious scruples against capital punishment, and as to whether he will convict on circumstantial evidence in .such a ease.
The prosecuting officer must necessarily exercise a wise discretion in the selection of a jury. He is presumed to be acquainted with the jurors summoned to serve, and to have some knowledge as to their previous service, and fitness for jury duty.
It may be much better for the interest of the state and the enforcement of law to take a juror on the panel who is opposed to capital punishment, than one who declares that he is in favor of the extreme penalty. On the other hand, a juror who is opposed to capital punishment may be, for other just reasons, equally undesirable as a member of a panel in a capital case.
The law has wisely confided to the district attorney, as representative of law and order in each judicial district of the state, the right of challenge for cause, to be exercised in his discretion to the best interest of the state and the public welfare. This right has been left untrammeled by statute. It has not been restricted in any case, and we know of no law that authorizes this court to place any limitation upon its exercise. To hold that a state’s attorney in each capital case is compelled to propound to each juror questions as to his conscientious scruples against capital punishment and as to whether he would convict on circumstantial evidence in such cases might defeat the ends of justice in some cases, instead of promoting the enforcement of the law. We fail to see any unfair practice in this ease upon the part of the able district attorney representing the state, and we fail also to find that any prejudice has resulted to defendant by the exercise of the challenges for cause by the state in the manner indicated.
Bill of Exception No. 5.
This bill was taken to the refusal of the court to sustain a challenge for cause of the juror L. L. Moore, which was tendered by the defendant. The defendant exhausted his peremptory challenges in challenging this juror, before the jury was obtained.
While it is true that if a challenge for cause made by a defendant is improperly overruled, and defendant’s peremptory challenges are exhausted before a jury is obtained, he is prejudiced, and the verdict will be set aside, even though it be not shown that any juror objectionable to him was allowed to serve; yet we are of opinion that defendant’s challenge for cause of this juror was properly overruled by the trial judge.
The direct examination of this juror on his voir dire shows that he is a competent juror. He had heard about the circumstances of the homicide, had formed an opinion, but stated that it would yield readily to the evidence, and that he would be’governed by the evidence in the case. On cross- *309 examination, able counsel for defendant propounded only two questions to this juror:
“Q. Mr. Moore, I understand you to say that you have formed an opinion of the guilt or innocence of the defendant? A. From what I heard of it; yes, sir. Q. I understood you to say that that opinion was of such a nature as to take strong testimony to change it? (Italics ours.) A. Well, it would.”
The juror had not testified on direct examination that it would take “strong evidence” to remove his opinion. On the contrary, he had said that he had no fixed opinion, and would be governed by the evidence in the trial of the case. The juror was evidently misled by the question of counsel, who assumed, in putting the question to the juror, that he had said that it would require “strong evidence” to change his opinion. The cross-examination of this juror was both brief and adroit, and the answer of the jur- or, under the circumstances, fails to impress us with the idea that he was made incompetent by the cross-examination.
Bills of Exception Nos. 6 and 7.
These bills were reserved to the admission of the testimony of Mrs. Henrietta King, wife of the deceased, and to that of the sheriff of Franklin parish, in reference to a telephone conversation between them immediately after the killing, and in reference to a similar telephone conversation between the sheriff and R. D. Gant at Crystal Springs.
The testimony of these witnesses is merely to the effect that Mrs. King rang the sheriff on the day of the killing, between 2 and 3 o’clock, and shortly after the homicide. and informed him that some one had killed Bill King, her husband, near her house. The sheriff then called Gant over the telephone at Crystal Springs to notify him to come with his bloodhounds to Winnsboro. He stated that he went with Gant to the scene of the homicide, and that Charley King showed him about where he saw the smoke come from the gun that was fired that killed deceased.
This testimony is of the most general character, and implicated no one as the guilty party. All of the parties named appeared as witnesses before the jury and testified to the same effect, and, if the testimony was hearsay and irrelevant, it could not have prejudiced the accused, under the circumstances of the case. The deceased was assassinated from ambush by a party unknown at the time of the killing, and the state’s case necessarily was one resting upon circumstantial evidence. In the case of State v. Oteri, 128 La. 939, 55 South. 582, Ann. Cas. 1912C, 878, this court said:
“Where the state relies exclusively on circumstantial evidence, the objection of irrelevancy is without force, unless, after the close of the evidence for the prosecution, the accused requests the court to strike out the evidence objected to as irrelevant or to instruct the jury to disregard it, and the court refuses to do so.”
Bill of Exception No. 8.
This bill relates to the admissibility of “bloodhound testimony.” This is no longer an open question in this state, after the proper foundation is laid for the admission of such testimony.
In the case of State v. King, 144 La. 433, 80 South. 616, we said:
“The evidence attached to and forming part of the bill of exceptions shows that the requisite preliminary foundation had been laid for the introduction of testimony of the trailing by the bloodhound referred to in the case.
“It was shown by the witness Gant, the owner of the dog, that he (the dog) was characterized by acuteness of scent and the power of discrimination; that he was trained, tested, and reliable in the tracking of human beings; that he was laid on the trail where the circumstances tended to show where the guilty party had been; and that he followed such scent or track to the defendant, who was at his home about a quarter of a mile from the scene of the murder. This preliminary foundation was strengthened by the testimony of Gant as to his *312 own worthiness as a witness and trainer of bloodhounds; and as to the pedigree and purity of the blood of the animal, which tracked defendant. It was further shown that defendant had the fullest opportunity, by cross-examination, to inquire into the breeding and testing of the dog, and to all the circumstances and details of the hunt, that he might lead the jury to believe, if he could, either that the dog was unreliable or unskilled, or that he so acted in the trial as to deprive the evidence of incriminating value. * * *
“It appears from the record in this case that other evidence was before the jury.”
The objection of counsel that “bloodhound testimony” is incompetent, irrelevant, and purely hearsay, as it is an attempt to prove the actions of dogs, and deprives the defendant of his constitutional right of being confronted by witnesses face to face, with the right to cross-examine them, is not well founded, as such evidence is not inadmissible on the ground that the dog is the witness and cannot be cross-examjned, since it is the human testimony which makes the trailing done by the animal competent, and the defendant was confronted by the witnesses to such testimony, who were subject to full cross-examination by him. 16 Corpus Juris, p. 564, sec. 1095. See, also, State v. Harrison, 149 La. 83, 88 South. 696; State v. Davis, 149 La. 1010, 90 South. 385.
That the foundation required by law has not been laid or established in this case, if the testimony was otherwise admissible, is an objection of . counsel for defendant, which must yield to the ample proof 'before us as to the' training and reliability of the two Red English hounds employed in this case by the witness Gant, who has been engaged in the business of breeding, training, and handling bloodhounds for the last 21 years. These dogs were 16 or 17 years old when used in this particular case, and had been trained in trailing human beings under the personal supervision of the witness since they were about 3 months old. They were laid on the trail at a certain spot in the pasture where the smoke was seen to come from behind a certain tree, which was pointed out to the witness Gant as the spot where the assassin had stood. This fact excludes the probability of their having been placed on a wrong trail, especially as no persons were permitted to go there until the dogs arrived. The testimony of the witnesses Gant, C. W. Berry, and others is to the effect that, taking the trail at that point, the dogs trailed in a direction away from the house of defendant and across the grass and leaves where a footprint was not visible until they came to a small drain in the pasture, and at that point the track of the person trailed was clearly visible and distinct. These tracks were made by shoes with rundown heels and the uppers torn loose from the soles, the imprint of the shoes and the defects being clearly discernible. This track could be seen all along the path leading to defendant’s house. The dogs trailed these tracks to this house, to a bed in one room, then into a dining room, through the kitchen, and out into the back yard, when the trail stopped. When> defendant’s shoes were applied to these footprints, they fitted perfectly.
In the present case there was other testimony as to the previous enmity of defendant against the deceased, repeated threats upon the life of deceased by defendant, etc.
Upon these fhcts the defendant has been twice convicted by a jury, a verdict of “guilty as charged without capital punishment” being returned in each trial.
Evidently, these juries have accepted the testimony of Gant and other state witnesses as credible and sufficient.
Bill of Exception No. 9.
This bill was reserved to the admissibility of the testimony of C. W. Berry, deputy sheriff, as to the actions of the dogs; the objections being the same as were urged *313 .against the admissibility of the testimony given by the witness Gant. We held that similar testimony of the witness Berry was admissible in the case of State v. Davis, 149 La. 1010, 90 South. 385, and find no good reason to reverse that ruling in the present case.
Bill of Exception No. 10.
Defendant’s counsel reserved a bill to the 'admissibility of the testimony of the witness Mike Jenkins as to prior threats made by defendant against deceased and as to the intimidation of this witness and of Marion Herling, also a state witness, while on their way to court on the morning of the first trial. We held that this testimony was admissible on the first trial in the case of State v. Davis, 149 La. 1011, 90 South. 385.
In prosecutions for murder, proof of prior difficulties and of threats, as well as of attempts by a defendant to intimidate a witness, are admissible. State v. Baden, 42 La. Ann. 295, 7 South. 582; State v. Cavanaugh, 52 La. Ann. 1254, 27 South. 704; State v. Edwards, 34 La. Ann. 1012; State v. Birdwell, 36 La. Ann. 860.
Bill of Exception No. 11.
The indictment in this ,case charges that the defendant murdered deceased on November 30, 1920. The state offered to prove by the witness Ellis Parsons certain threats made by defendant against the life of deceased in September, 1920. The objection that such threats were made at a time too remote is not well taken.
Bill of Exception No. 12. ,-
Defendant requested the following special charge to the jury:
“I instruct you, gentlemen of the jury, that the law not only presumes that every person is innocent until he is proven guilty, but the law also presumes that a person had a good character and reputation until the contrary is shown by the evidence, and that you have no right to consider the omission on the part of the defendant to introduce evidence of good character as a circumstance against him or as tending to show his guilt in this case.”
The trial judge refused to give this special charge for the reason that the character of defendant was not put at issue. This bill fails to show that any question whatever arose as to the character of the defendant in the case, and admits that no testimony of any kind as to the general reputation of defendant was adduced at the trial. The special charge was an attempt to get before the jury indirectly a presumption of defendant’s good character without any proof, and without giving to the state an opportunity to rebut such presumption by counter testimony. Testimony as to good character is competent in all criminal prosecutions. 'Such testimony should be of a kind to negative the accusation against the defendant. If charged with murder, the defendant may prove his general reputation in a community as being a peaceful and law-abiding man. Such testimony may tend to create a doubt in favor of the accused, or remove a doubt against him; but testimony as to good • character is useless against clear evidence of guilt, and if the jury are satisfied of the guilt of the accused beyond a reasonable doubt from the evidence in the case, testimony as to good character is wholly unavailing. State v. Nicholls, 50 La. Ann. 707, 23 South. 980; State v. Riculfi, 35 La. 770; State v. Spooner, 41 La. Ann. 780, 6 South. 879; State v. Walsh, 44 La. Ann. 1135, 11 South. 811; State v. Simon, 131 La. 520, loc. cit. 528 and 529, 59 South. 975. The special charge was properly refused, as it was also calculated to mislead the jury. In the general charge the judge instructed the jury that—
“The law raises no presumption against the defendant, but that every presumption is in favor of his innocence,” etc.
*316 Bill of Exception No. 13.
Defendant’s counsel requested the trial judge to give the following special charge, which was refused:
“The court charges you, gentlemen of the jury, that in order to justify an inference of legal guilt from circumstantial evidence, the evidence of the inculpatory facts must be absolutely incompatible with the innocence of the accused party upon any rational theory and incapable of explanation upon any other reasonable hypothesis than that of the guilt of the accused party.”
The special charge was refused as same is covered by the general charge, and for the further reason that the special charge is couched in language that is not readily comprehended by a layman.
After explaining the nature of circumstantial evidence, the trial judge charged the jury in his general charge that—
“Circumstantial evidence is legal evidence and the jury is authorized to convict if it produces moral conviction of the truth of the charge to the exclusion of every reasonable doubt.” (Italics ours.)
In the case of State v. Jenkins, 134 La. 186, 63 South. 869, we held that the test of the sufficiency of circumstantial evidence, in a criminal case, is not whether it produces the same conviction as the positive testimony of a single eyewitness, but whether it produces moral conviction to the exclusion of every reasonable doubt. The charge is correct and sufficient.
Bill of Exception No. 14.
Counsel for defendant objected to the following 'portion of the general charge to the jury:
“A reasonable doubt is a doubt reasonably arising from the failure of the evidence to convince the minds of the jury. It reasonably arises from the failure of the evidence introduced upon the trial of the case.”
The objection urged by counsel is that this is not the law, and that to'so charge would exclude all reasonable doubts that may arise from the lack or want of evidence.
Counsel also objected to the following portion of the general charge: “Gentlemen of the jury, your conscience should be your guide as to what is & reasonable doubt” — the objection being that this is not correct law. We note that counsel for defendant requested no special charge as to reasonable doubt in this case, but rests entirely on his objections.
A reasonable doubt which “arises from the failure of the evidence upon the trial of the case” is not limited merely to unsatisfactory evidence, or the failure of the evidence; the word “failure’' being of broader significance than either “want” or “lack.”
In the case of State v. Mehojovich, 118 La. 1018, 43 South. 660, we held the following charge as to reasonable doubt sufficient:
“If, after. giving a fair and impartial consideration to all of the facts in the case, you find the evidence unsatisfactory upon any point indispensably necessary to constitute the prisoner’s guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.”
It might as well be argued in that case, as in this, that the phrase, “if you find the evidence unsatisfactory,” referred, not to the lack or want of evidence, but to 'the failure of the evidence to convince the jury.
The general charge as to reasonable doubt reads as follows:
“The law raises no presumption against the defendant, but every presumption is in favor of his innocence, and in order to convict him of the crime alleged in the indictment or of any lesser crime included in it, every material and substantial allegation and fact necessary to constitute such a crime must be proved beyond a reasonable doubt. A reasonable doubt is a doubt of guilt, reasonably arising from the failure of the evidence to convince the minds of the jury. It reasonably arises from the failure of the evidence introduced on the trial of the' case. It does not mean a doubt based on conviction or imagination, but a reasonable doubt is one for which a good reason could be given. It means a real, solid, sensible, sub *317 stantial doubt. It is a doubt which is reasonable in view of all of the testimony.
“Gentlemen of the jury, let your consciences be your guide as to what is a reasonable doubt. If you can conscientiously say that you are satisfied of the truth of the charge against the defendant by the evidence, then you can say that you are satisfied beyond a reasonable doubt.
“And in this ease, gentlemen of the jury, if, after an impartial consideration and comparison of all of the evidence in this case, you can say that you have an abiding faith of the proof of the charge against the defendant and that you are morally certain of the defendant’s guilt beyond the exclusion of every reasonable doubt, then it would be your duty to find the defendant guilty, which you may do by finding him guilty as charged, or guilty without capital punishment.”
The judge’s charge must he considered as a whole and particular expressions construed with reference to the context. State v. Sehon, 137 La. 83, 68 South. 221; State v. Seals, 135 La. 602, 65 South. 756.
Tested by this rule, we find the charge legal and .sufficient as to “reasonable doubt.”
Bill of Exception No. 15.
All of the grounds alleged and urged in the motion for a new trial have been disposed of in this opinion in the discussion of the various bills of exception, except the failure of the clerk of the court to inscribe in the minutes of the court the order of the district judge calling the special term at which defendant was tried and convicted. This omission on the part of the clerk is conceded. The order'of the court, dated December 10, 1920, calling the grand jury in special session, and indorsed by the clerk of court as filed December 10, 1920, is found on page 138 of the transcript.
In the case of State v. Claude et al., 35 La. Ann. 71, this court said:
“The question is, whether the right of the judge to hold special term [of court], called by him in the exercise of express statutory authority, and after compliance with every duty imposed on him, can be defeated by the clerk to perform a duty in connection therewith imposed by law upon him. If so, it would give-the clerk the extraordinary power of nullifying the authority vested by the law in the judge and of preventing the holding of any special term. Such a doctrine cannot receive our assent.”
The motion for new trial was therefore' properly overruled.
Bill of Exception No. 16.
The motion in arrest filed in this case alleges as the ground for arrest of judgment the failure of the clerk of court to enter in the minutes of the court the order calling the grand jury in special session, and urges the invalidity of the indictment returned! thereby because of such omission.
The failure of the clerk of court to perform a ministerial duty will not be permitted to-strike with nullity the action of the district judge in calling a special term of court, when he is expressly authorized by statute to take such action. State v. Claude et al., 35 La. Ann. 71.
Eor the reasons assigned, the judgment appealed from is affirmed.
• O’NIELL, J., dissents and hands down his reasons.