STATE OF LOUISIANA

VERSUS

ARGENTINA MESA

NO. 18-KA-526

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 15-4323, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING

November 27, 2019

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and Hans J. Liljeberg

**CONVICTIONS AFFIRMED;**
**SENTENCE ON COUNT THREE AFFIRMED;**
**SENTENCE ON COUNT TWO VACATED;**
**REMANDED FOR RESENTENCING**
    **MEJ**
    **JGG**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Paul D. Connick, Jr.
 Terry M. Boudreaux
 Anne M. Wallis
 Laura S. Schneidau
 Emily E. Booth

COUNSEL FOR DEFENDANT/APPELLANT,
ARGENTINA MESA
 Sherry A. Watters

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA, DEPARTMENT OF JUSTICE
 Jeffrey M. Landry
 Colin Clark
 J. Taylor Gray

**JOHNSON, J.**

Defendant, Argentina Mesa, appeals her convictions and sentences for sexual battery from the 24th Judicial District Court, Division "J". For the following reasons, we affirm the convictions and sentence on count three and vacate the sentence on count two. We remand the matter with instructions.

## FACTS AND PROCEDURAL HISTORY

On July 27, 2015, the Jefferson Parish District Attorney filed a bill of information charging Defendant and her co-defendant, Elvin D. Villafranca, with various sex offenses committed against known juveniles. Specifically, Defendant was charged with forcible rape of a juvenile[1] (D.O.B. 8/29/2000) in violation of La. R.S. 14:42.1 (count one), sexual battery of a juvenile (D.O.B. 8/29/2000) in violation of La. R.S. 14:43.1 (count two), and sexual battery of a juvenile under 13 years of age (D.O.B. 5/27/2005) in violation of La. R.S. 14:43.1 (count three).[2] Defendant pleaded not guilty to the charged offenses on August 13, 2015.

Trial commenced before a twelve-person jury on March 12, 2018.

*Sexual Battery of J.C.*

On March 26, 2015, Officer Duston Costa of the Gretna Police Department met with C.C. and 15-year-old J.C., who were requesting to make a complaint regarding a possible rape. He explained that J.C. had confided in C.C. that sometime in November of 2013, she went over to Defendant's house and was the victim of rape and a sexual assault by Defendant and co-defendant Villafranca. According to Officer Costa, J.C. relayed to him that Defendant had served her

---

[1] In the interest of protecting minor victims and victims of sexual offenses as set forth in La. R.S. 46:1844(W)(3), the judges of this Court have adopted a policy that this Court's published work will use only initials to identify the victim and any defendant or witness whose name can lead to the victim's identity (i.e., parent, sibling, or relative with the same last name as the victim). *State v. Ross*, 14-84 (La. App. 5 Cir. 10/15/14); 182 So.3d 983, 985 n.3.

[2] Co-defendant Villafranca was charged along with Defendant in counts one and three and separately in count four with sexual battery of a juvenile under the age of thirteen (D.O.B. 11/1/2007) in violation of La. R.S. 14:43.1. Defendant and co-defendant were tried simultaneously. Co-defendant Villafranca's appeal is under companion case number 18-KA-500.

alcohol while in their home that day.

Detective LeBlanc was working for the Gretna Police Department when J.C. and C.C. came into the police department to file the report. J.C. explained to Detective LeBlanc that in November of 2013, when she was 13 years old, she was at Defendant's home on Newton Street when the incident occurred. J.C. further identified an individual by the name of S.B. (the victim in count three) as a potential witness to part of the incident. After obtaining J.C.'s statement, he referred her to the Children's Advocacy Center ("CAC") where an interview was conducted which was consistent with the information J.C. had provided to Detective LeBlanc. Warrants were then prepared for the arrest of Defendant and co-defendant. Pursuant to the arrest warrants, Defendant and co-defendant were arrested on additional charges and advised of their rights. Defendant and co-defendant Villafranca were transported to the Gretna Police Department where they agreed to provide statements. During the interview with Defendant, she admitted to watching J.C. at her home. But then, according to Detective LeBlanc, Defendant spent the majority of the interview "trying to slander [J.C.'s] name." During his interview with co-defendant Villafranca, he told Detective LeBlanc that Defendant would babysit children at their residence, naming several children, except for the victims in this case until specifically asked. However, neither Defendant nor co-defendant Villafranca made any inculpatory statements during their interviews.

Anne Troy, forensic nurse practitioner at the Audrey Hepburn Care Center and expert family nurse practitioner specializing in the maltreatment of children, testified that she met with J.C. on April 6, 2015. Ms. Troy's first impression of J.C. was that she had a very chaotic life filled with neglect, lack of supervision, and emotional and physical abuse. Ms. Troy further explained that J.C. possessed all the risk factors for being a child vulnerable to abuse. She explained that those who

are targeted for sexual abuse have often already been labeled a liar, troublemaker, or drug user. Ms. Troy noted that when she met with J.C., J.C. was 14 years old, had recently had a baby, and had been running away from home.

In Ms. Troy's opinion, J.C. provided a clear and detailed spontaneous history of sexual abuse. She told Ms. Troy that co-defendant Villafranca picked her up one day at her grandmother's house and brought her to his house. She told Ms. Troy that S.B. was there but in another room watching television because she was not permitted to watch the show they were watching. J.C. explained to Ms. Troy that co-defendant asked her if she wanted something to drink, and she requested a soda, but instead, he brought her a glass cup filled with a clear liquid. She stated the drink burned her throat and she knew it had to be alcohol. When she confronted co-defendant about it, she stated that he laughed and brought her another drink. J.C. told Ms. Troy that she threatened to leave, but Defendant questioned her as to how she was going to get home. J.C. recounted that she tried to go back to the room where S.B. was watching television when co-defendant Villafranca grabbed her and brought her into his room. J.C. stated that co-defendant threw her on the bed, opened her legs, and penetrated her vagina. She stated that she was crying. When he was done, he left the room, and Defendant came into the room and started touching her inside her vagina with her finger. She told Ms. Troy that Defendant told her to stop crying "because you know you liked it." It was then that J.C. got up and ran to S.B.'s room where she attempted to tell S.B. what had happened but recalled that S.B. did not believe her because Defendant and co-defendant had told S.B. she was drunk.

J.C. explained to Ms. Troy that she again tried to leave but had no way of getting home, so she fell asleep by the front door. The next day co-defendant Villafranca dropped J.C. off at her house and told her not to tell anyone because

"something would happen to" her.  She reported that she told C.C.[3] what happened

after C.C. called her and asked her if anything had happened with the defendants

because something had happened to her daughter, D.V., and she knew J.C. would

often visit Defendant's home.

Seventeen-year-old J.C. testified similarly at trial, explaining that she was

originally born in Honduras and came to the United States with her grandmother

and mother when she was one and one-half years old.  She testified that she was

nine years old when her mother was deported, so she lived with her grandmother.

J.C. stated that her grandfather would hit her, so she often times stayed elsewhere.

J.C. further testified that she now lives with her boyfriend and her two children.

J.C. testified that she was ten years old when she met Defendant at her

grandmother's house.  She recalled that she was very close with Defendant and

often slept over at her house.  On occasion she would bring S.B. with her to

Defendant's house, explaining that her grandmother used to watch S.B.  J.C.

further recalled a time when she and S.B. stayed at Defendant's house for a week

in November of 2012 or 2013 when she was 12 or 13 years old.  One night during

that week, when co-defendant Villafranca arrived home from work "drunk," S.B.

was sent to her room because she was not old enough to watch the show that was

on television due to its mature content.  J.C. explained that she was sitting on the

sofa with Defendant when co-defendant Villafranca asked J.C. if she wanted a

drink and was handed something "clear and bubbly."  J.C. informed him that she

was not old enough to drink, but after encouragement by Defendant and co-

defendant, she drank what was given to her.  Co-defendant Villafranca then poured

J.C. another glass and began laughing at J.C., stating "it's fine.  It won't do you

anything."  J.C. explained that she began to feel ill and tried to go back to her

---

[3] C.C. is the mother of another victim, D.V., involved in the case against co-defendant
Villafranca.

bedroom but was brought back to the living room by Defendant.

J.C. and Defendant got into an argument because she wanted J.C. to continue drinking and later pushed J.C. Co-defendant then forced J.C. into his bedroom, refusing to let J.C. leave. J.C. asked Defendant to help her, but she refused. She testified that she was wearing the nightgown Defendant had bought her, explaining that she used to wear pajama pants, but Defendant told her "girls wear nightgowns," and instructed her to wear it that night. J.C. testified that co-defendant Villafranca pushed her onto the bed, got on top of her, and vaginally raped her. J.C. stated that when she resisted, co-defendant Villafranca hit her and told her to "shut up."

When it was over, co-defendant Villafranca left the room, and Defendant came into the bedroom and started touching J.C.'s legs and then digitally penetrated J.C.'s vagina, telling J.C. that she liked it, and "needed to learn." J.C. testified that she got up crying and ran into S.B.'s room and told her they had to leave. J.C. stated that she told S.B. what had happened, but that S.B. did not believe her because Defendant and co-defendant had told S.B. she was drunk. J.C. recalled that she became ill and vomited in the kitchen sink. She testified that Defendant followed her and told her that she was "stupid" and had to listen to her because "she knew what was best for" her and that if she gave co-defendant a baby, he would give her anything she wanted.

J.C. tried to leave the house but did not have a cellphone or a car. J.C. testified that she fell asleep by the door, and when she woke up she went back to the bed where S.B. was sleeping and fell asleep until the next morning. When J.C. and S.B. awoke, S.B. asked J.C. what had happened and why she had been drinking. J.C. tried to explain to S.B. that she does not drink, but S.B. again did not believe her. Later, the defendants dropped J.C. off at her house and threatened that if she said anything about what happened, their family members in Honduras

would "do something" to her family in Honduras.

She explained that she did not tell anyone what had happened to her until her cousin, C.C., called her. J.C. stated that C.C. advised her to tell the police if something bad had happened. J.C. agreed and reported the rape to the police.[4] While at the police station, J.C. testified that she overheard a conversation between the officers and C.C. regarding D.V., which was the first time she had learned of what happened to D.V. J.C. further testified that S.B. eventually disclosed to her that something had also happened to her while at Defendant and co-defendant's house, and J.C. advised S.B. to tell her mother.[5]

J.C. testified that she is in therapy as a result of the rape and stated that she was referred to a lawyer who informed her of the possibility of obtaining a U-Visa.

### *Sexual Battery of S.B.*[6]

After the defendants were arrested for the sexual abuse committed upon D.V. and J.C., C.C. contacted Detective LeBlanc about another victim, S.B.,[7] whom she stated also had a complaint to lodge against Defendant and co-defendant. Detective LeBlanc met with S.B. who asserted that in August of 2014 she too had been the victim of a sex crime and had already been to the Audrey Hepburn Care Center for evaluation. A forensic interview was arranged for S.B. at the CAC and warrants for Defendant and co-defendant's arrests on charges of sexual battery were executed.

During her interview at the CAC on May 6, 2015, nine-year-old S.B. told Ms. Dupepe that, one day when defendant was babysitting her at defendant's house, she took a shower, got dressed, and fell asleep in Defendant's bed. She

---

[4] J.C. was presented a photographic lineup while at the police station and identified co-defendant Villafranca as the perpetrator of the rape. At trial, J.C. identified Defendant in open court but stated that she did not see co-defendant.

[5] Erika Dupepe of the CAC conducted the interview with J.C. on March 27, 2015. J.C. testified at trial consistently with her interview with Ms. Dupepe as to the rape.

[6] Co-defendant Villafranca was also charged in count three with the sexual battery of S.B.

[7] It is noted that at some places in the record, S.B.'s first name is spelled with a Z, rather than an S.

stated that when she woke up co-defendant Villafranca was "touching" her on the inside of her "private part" with his hand. She told Ms. Dupepe that she told co-defendant to stop and that he responded, "that's something you're going to have to do when you're older." S.B. recalled that Defendant then came into the room and "said the same thing." When S.B. asked Defendant to "do something about" co-defendant Villafranca, Defendant threatened her, advising her not to tell anyone what had happened. She also told Ms. Dupepe about a time while at Defendant's home when J.C. was given alcohol. She stated that J.C. got dizzy and "blacked out." S.B. recalled that she later went to sleep next to J.C., but when she awoke, J.C. was not in the bed. She stated that she could hear J.C. screaming from Defendant's room. When she asked Defendant what was happening, Defendant stated "don't mind." S.B. told Ms. Dupepe that she could hear J.C. say, "no, I'm still a little girl."

Ms. Troy also met with S.B. on April 8, 2015, at the Audrey Hepburn Care Center when S.B. was nine years old. Upon her physical examination of S.B., Ms. Troy noted S.B. had a labial adhesion, which she testified was "non-specific," explaining that it could have been obtained based on a multitude of reasons, one of which could have been sexual abuse. Ms. Troy also testified that she treated S.B. for a urinary tract infection, which could or could not have been caused by sexual abuse.

S.B. also provided a detailed history to Ms. Troy during which she told Ms. Troy that, approximately one year prior to their meeting, she was at the defendants' house. After taking a shower, she went into the defendants' room to change when co-defendant Villafranca came into the room and touched her on her "private part" with his hand. She stated that Defendant was watching co-defendant Villafranca touch her. S.B. told co-defendant to stop but he ignored her and asked her if she "liked it." When S.B. told him no, he stated, "well, you're going to have to like it

because one day you're going to have to do it." Defendant also told S.B. to "get comfortable with it."

She also relayed to Ms. Troy that, one time when she was sleeping, Defendant and co-defendant came into the room. She recalled that co-defendant Villafranca was naked and Defendant forced her to touch co-defendant's "private part" by grabbing her hand and placing it on his "private part." S.B. stated that she threatened to tell her mother so Defendant stopped. She later told her mother that co-defendant Villafranca was touching her "without any supervision."

S.B. also told Ms. Troy about a time when J.C. was over at Defendant and co-defendant's house, and co-defendant Villafranca gave J.C. alcohol and then brought her into his room, where they were naked on the bed. However, S.B. stated that she was not present for the incident involving J.C. Based on her discussions with S.B., Ms. Troy concluded that the information provided was consistent with the allegations of sexual abuse committed upon S.B., noting that S.B. provided a clear and detailed spontaneous history of sexual abuse.

G.V., S.B.'s mother, testified that her daughter S.B. was born on May 28, 2005. She confirmed that she is originally from Honduras and that she entered the United States illegally. G.V. testified that she met Defendant at her previous place of employment. She explained that Defendant would take care of S.B. and that S.B. would stay overnight at Defendant's house on occasion. She recalled that when Defendant and co-defendant were arrested, she contacted C.C., a former co-worker whom she knew had gone through a similar situation and asked where she could take S.B. to have her "checked." C.C. informed G.V. of the Audrey Hepburn Care Center and told her that something had also happened to her daughter D.V. G.V. explained that she brought S.B. to the care center for evaluation and was also referred to the Family Justice Center, where she was introduced to an immigration attorney who assisted her in filling out paperwork for

a U-Visa.

Lieutenant Grey Thurman of the Gretna Police Department explained that a U-Visa is an application made through the Department of Homeland Security to authorize temporary citizenship to certain victims or family members of certain crimes. Lieutenant Thurman signed the U-Visa certification for J.C., G.V., and C.C.'s applications, verifying that a crime had in fact occurred.

S.B. testified that she was born on May 27, 2005. S.B. testified that Defendant was her babysitter and that she started going to her house when she was six months of age until 2015. She explained that she had a strong bond with Defendant and co-defendant until the "incident" after which she stopped going to their house. S.B. testified that on one occasion when she was eight or nine years old, she was sleeping in Defendant's bed when she woke up to find co-defendant Villafranca touching her on the outside of her vagina. S.B. stated that she tried to stop him by kicking and punching him but that he held her hands down. S.B. testified that Defendant walked into the room and saw what was going on but did nothing to stop it, instead, Defendant told S.B. "stop trying to stop it because you are going to have to do it anyway when you get older."

On another occasion, S.B. recalled that she was at Defendant and co-defendant's house in their bed when Defendant grabbed her hand and put it on co-defendant's penis. S.B. testified that she tried to resist when Defendant asked her "why won't you touch it?" According to S.B., Defendant eventually stopped after S.B. threatened to tell her mother. S.B. recalled that she originally denied that anything had happened to her when questioned by J.C. because she was afraid but later confessed to J.C. and her mother that "something did happen."[8] She testified

---

[8] S.B. also recalled a time when she was seven or eight years old, and she observed J.C. drink out of a bottle and start "acting different." She explained that she was sitting on the couch watching a movie when co-defendant Villafranca came home from work and offered J.C. a drink. Co-defendant then returned with a green bottle, which J.C. drank causing her to feel dizzy and fall asleep. She recalled that co-defendant took J.C. into his bedroom and testified that she could hear yelling while in the living room. When she asked Defendant what was going on, Defendant told her "not to pay any mind." She testified

that the defendants threatened to hurt anyone she told.[9]

On March 20, 2018, at the conclusion of the trial, the jury returned a verdict of not guilty on count one and guilty as charged on counts two and three.

On April 16, 2018, the trial court denied Defendant's motion for new trial. On the same date, after a waiver of sentencing delays, the trial court sentenced defendant on count two, sexual battery of a juvenile, to ten years imprisonment without the benefit of parole, probation, or suspension of sentence, and on count three, sexual battery of a juvenile under thirteen years of age, to 25 years in the Department of Corrections[10] without benefit of parole, probation, or suspension of sentence. The trial court further ordered the sentences imposed on counts two and three to be served consecutively to one another. The court also recommended Defendant for drug treatment and any suitable self-help programs offered by the Department of Corrections.

Immediately following the imposition of Defendant's sentences, the trial court denied Defendant's oral motion to reconsider sentence. On April 17, 2018, Defendant filed a motion for appeal, which the trial court granted on April 19, 2018. On May 18, 2018, Defendant filed a *pro se* motion for modification and/or amendment of sentence, which the trial court denied on May 22, 2018. The instant appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Defendant alleges: 1) she is entitled to a new trial due to the irregularities and discrepancies in the transcripts; 2) the State failed to prove the

---

that she did not spend the night at Defendant and co-defendant's house that night, and she did not see Defendant go into the bedroom.

[9] Character witnesses, Eleazar Bueso and Tulio Garcia, the pastor and assistant pastor at the church where defendant and co-defendant are members, testified that both Defendant and co-defendant have a good reputation in their church community. Celia Escobar, a friend of Defendant and co-defendant, also testified regarding their good reputation.

[10] Although the trial court did not state that Defendant's sentence on count three was to be served at hard labor, "a sentence committing a prisoner to the Department of Corrections is necessarily at hard labor." *State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04); 885 So.2d 618 (citing *State v. Lisenby*, 534 So.2d 996, 998 (La. App. 3d Cir.1988)).

charges beyond a reasonable doubt; 3) she received ineffective assistance of counsel that allowed a non-unanimous verdict; and 4) her sentences are excessive.

## LAW AND ANALYSIS

Sufficiency of the Evidence[11]

Defendant argues no rational juror could have found the State proved the crimes of sexual battery, or even misdemeanor sexual battery, beyond a reasonable doubt. With respect to count two, Defendant avers that alleged internal contradictions or irreconcilable conflicts would not support a reasonable juror finding the State proved Defendant committed sexual battery upon J.C. She further asserts, as to count three, the elements, including identity of the alleged victim, were not proven.

In response, the State submits the evidence is sufficient to support the convictions in this case. It asserts the jury heard about any alleged inconsistencies and chose to reject them, finding the victims' testimonies credible. The State further contends that with respect to the identification of the victim in count three, the record established that the victim was born in 2005 and that the crime occurred in 2014, supporting the charge and conviction that it was S.B. who was sexually abused by Defendant when Defendant forced S.B. to touch co-defendant Villafranca's penis. Accordingly, after viewing the evidence in the light most favorable to the prosecution, the State maintains that it proved the essential elements of the crimes committed by Defendant against the victims in this case beyond a reasonable doubt.

---

[11] When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. *Id.* Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. *Id.* Therefore, the sufficiency of the evidence is addressed before Defendant's other assignments. *See also State v. Nguyen*, 05-569 (La. App. 5 Cir. 2/3/06); 924 So.2d 258, 262.

In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-0674 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. *State v. Caffrey*, 08-717 (La. App. 5 Cir. 5/12/09); 15 So.3d 198, 202, *writ denied*, 09-1305 (La. 2/5/10), 27 So.3d 297. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. *Id*. Indeed, a reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *See State v. Calloway*, 07-2306 (La. 1/21/09); 1 So.3d 417, 418. As a result, under the *Jackson* standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. *State v. Jones*, 08-20 (La. App. 5 Cir. 4/15/08); 985 So.2d 234, 240.

In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. *Caffrey*, *supra*. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *See State v.*

*Bailey*, 04-85 (La. App. 5 Cir. 5/26/04); 875 So.2d 949, 955, *writ denied*, 04-1605 (La. 11/15/04); 887 So.2d 476, *cert. denied*, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Dixon*, 07-915 (La. App. 5 Cir. 3/11/08); 982 So.2d 146, 153, *writ denied*, 08-0987 (La. 1/30/09); 999 So.2d 745. Moreover, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. *State v. Bruce*, 14-877 (La. App. 5 Cir. 3/25/15); 169 So.3d 671, 675, *writ denied*, 15-833 (La. 3/4/16); 187 So.3d 1007.

Here, Defendant was charged and convicted of sexual battery against two separate juvenile victims, J.C. and S.B. Specifically, Defendant was charged in count two with sexual battery of a known juvenile (J.C.), D.O.B. 8/29/2000, by fondling the victim's vagina and/or digital penetration on or between November 1, 2013 and November 30, 2013. In count three, Defendant was charged with sexual battery of a known juvenile (S.B.) where the child was under the age of 13, D.O.B. 5/27/2005, by the fondling of the victim's vagina and/or digital penetration and/or making the victim touch the offender's genitals on or between August 1, 2014 and August 30, 2014.

At the time of the instant offenses, sexual battery, La. R.S. 14:43.1 provided, in pertinent part:

> A. Sexual battery is the intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim, when any of the following occur:
>
> . . .
>
> (2) The act is consensual but the other person, who is not the spouse

of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender.

*Sexual Battery of J.C. (count two)*

Seventeen-year-old J.C. testified at trial that over the Thanksgiving holiday in November of 2012 or 2013, when she was approximately thirteen years old, she spent the night at Defendant and co-defendant Villafranca's house.[12] On that particular night, she recalled that co-defendant Villafranca served her alcohol, which she was pressured into drinking. J.C. testified that she began to feel ill and attempted to return to the bedroom where she normally slept when she was forced by co-defendant Villafranca into his bedroom and pushed onto the bed, where he then got on top of her and vaginally raped her. She testified that when she resisted, co-defendant Villafranca hit her and told her to "shut up." When it was over, Defendant then came into the bedroom and started touching J.C.'s legs and then digitally penetrated J.C.'s vagina, telling J.C. that she liked it, and "needed to learn."

At trial, S.B. was questioned about a time when she was over at Defendant and co-defendant's house and observed co-defendant Villafranca offer J.C. a drink. She confirmed that she was seven or eight years old when this occurred and that she did not actually see what happened with J.C., however, testified that while in the living room watching a movie, J.C. was served alcohol by co-defendant Villafranca and recalled that J.C. became dizzy and fell asleep. S.B. testified that co-defendant took J.C. into his bedroom and that she could hear yelling. She further stated that she did not observe Defendant enter the bedroom.

As for Defendant's conviction of sexual battery of J.C., Defendant argues that S.B.'s testimony is contradictory to J.C.'s testimony regarding the details of the events leading up the crime—including the time of the incident, where each

---

[12] The record reflects Defendant's date of birth is May 16, 1963, making her approximately 50 years old at the time of the offense.

person was located, what was on television, whether J.C. drank from a glass or a bottle, the number of drinks given to J.C., whether they spent the night at Defendant and co-defendant's house, and how they got home—such that it was unreasonable for a jury to conclude that the sexual battery of J.C. by Defendant was proven beyond a reasonable doubt. Defendant also concludes that neither J.C. nor S.B.'s trial testimonies were consistent with the statements made to the police or at the CAC with respect to this incident. Accordingly, Defendant avers that these inconsistencies, coupled with the fact that J.C. and Defendant remained close even after the alleged sexual battery, establish that no rational trier of fact could have found her guilty beyond a reasonable doubt of this offense.

First, it is well-settled that a victim's testimony alone can be sufficient to establish the elements of a sexual offense. *Bruce*, *supra*. Here, S.B. testified that she did not witness the crimes committed by the defendants on J.C.; however, J.C.'s testimony alone that Defendant digitally penetrated her vagina after co-defendant Villafranca vaginally raped her was sufficient to establish the elements of sexual battery. Second, testimony need not be uncontradicted to support a conviction. The resolution of conflicting or contradictory testimony is one of the fundamental tasks for the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *See Bailey*, *supra*.

Third, the alleged inconsistencies in J.C.'s recollection of the events and that of S.B.'s recollection do not render their testimonies insufficient to support Defendant's sexual battery conviction, as they are not irreconcilably inconsistent that Defendant digitally penetrated J.C.'s vagina. Further, a reasonable jury could have found that the various inconsistencies, which appear to concern matters tangential to the act of sexual battery, were due to the victims' young ages and the traumatic experiences they endured. *See State v. Alexander*, 12-194 (La. App. 5 Cir. 5/16/13); 119 So.3d 120, 128, *writ denied*, 13-1337 (La. 12/6/13); 129 So.3d

529. And fourth, while J.C. and S.B.'s alleged inconsistencies may be reason to question the events, the jury was tasked with weighing the evidence and made its credibility determination when it returned a verdict of guilty of sexual battery, evidently finding J.C.'s version of events credible. It is the fact-finder who weighs the respective credibility of the witnesses, and this Court will not second-guess those determinations. *State v. Smith*, 94-3116 (La. 10/16/95); 661 So.2d 442, 443.

Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact-finder's determination of guilt. *State v. Carraby*, 11-540 (La. App. 5 Cir. 2/14/12); 88 So.3d 608, 618, *writ denied*, 12-0669 (La. 10/12/12); 99 So.3d 37.

Accordingly, we find J.C.'s testimony that Defendant digitally penetrated her vagina was sufficient to convince a rational trier of fact beyond a reasonable doubt that Defendant was guilty of the charged offense of sexual battery. (*See State v. Gaddis*, 07-395 (La. App. 5 Cir. 11/13/07); 973 So.2d 21, 27-28, *writ denied*, 08-0156 (La. 10/10/08); 993 So.2d 1277, where the defendant argued that the victims' testimonies should not have been believed because of inconsistencies. This Court acknowledged there were some differences in what one of the victims said during her CAC interview and her trial testimony. However, citing *State v. Simmons*, 03-20 (La. App. 5 Cir. 4/29/03); 845 So.2d 1249, 1258, this Court noted that the discrepancies were not necessarily indicative of untruthfulness or incompetence.[13] *Gaddis*, 973 So.2d at 27 n.14. This Court concluded that despite some slight inconsistencies regarding some of the details, both victims described

---

[13] In *Simmons*, *supra*, this Court recognized that memory lapse and alleged inconsistencies may have resulted from the child-victim's tender age of five years on the date of the incident, the traumatic nature of the experience, exposure to unfamiliar surroundings, or the method of interrogation.

numerous events that were substantially the same. This Court found the jury's decision to believe the victims' accounts of the events over the defendant's testimony was rational and that the State proved the essential elements of aggravated rape beyond a reasonable doubt; *see also State v. Barbain*, 15-404 (La. App. 4 Cir. 11/4/15); 179 So.3d 770, 777-78, *writs denied*, 15-2179 (La. 4/4/16); 191 So.3d 578 and 15-2213 (La. 4/4/16); 190 So.3d 1201, where the defendant challenged the sufficiency of his conviction for sexual battery, arguing that the victims' testimonies were inconsistent as to who was living at the apartment, who slept in which bedroom, and where he was sleeping. He contended that since there was a lack of forensic or corroborative evidence, his conviction could not stand on the inconsistent testimony. The Fourth Circuit opined that although the State presented only testimonial evidence, after observing the witnesses and weighing the evidence, the trial judge, who was the trier of fact in that matter, convicted the defendant of sexual battery, and that the testimonies of the victims supported this finding. *Id.*, 179 So.3d at 778-79).

*Sexual Battery of S.B. (count three)*

With respect to Defendant's conviction for sexual battery of S.B., a juvenile under the age of 13, at trial, S.B. testified that she was born on May 27, 2005. She recalled that when she was eight or nine years old, in August before her fourth-grade year, she was sleeping in Defendant and co-defendant's bed when she woke up to find co-defendant Villafranca touching her on the outside of her vagina. She recalled that co-defendant held her hands down, and Defendant, who was present in the room watching, did nothing to stop him despite S.B.'s requests for help. Instead, Defendant told S.B. "stop trying to stop it because you are going to have to do it anyway when you get older." S.B. further testified that on another occasion, while at Defendant and co-defendant's house in their bed, Defendant grabbed her hand and forced her to touch co-defendant Villafranca's penis. S.B.

stated that she threatened to tell her mother, so Defendant stopped.

Defendant first claims the evidence insufficiently proved that S.B. was the victim alleged in count three because the alleged victim was identified by bill of information by a date of birth of May 27, 2005; however, at trial, while S.B. testified that her date of birth is May 27, 2005, her mother testified that S.B. was born on May 28, 2005. Defendant contends that while dates of birth are only relevant to determine whether the sentence can be enhanced, in this case, where they are the only means to designate the counts and identity of the victims, she contends proof of S.B.'s date of birth is essential. Defendant further maintains that the act of abuse charged in the bill of information does not fall within the "window" of time alleged in the bill of information thus claiming the evidence does not provide a basis for a reasonable juror to conclude that S.B. was the alleged victim in count three.

Despite Defendant's assertion, S.B.'s identity as the victim in count three was established through her testimony regarding her date of birth, May 27, 2005, which was correctly charged in the bill of information and through her testimony regarding the sexual battery she suffered at the hands of Defendant when she was starting "fourth grade," which, based on her date of birth would have been in August of 2014, as further set forth in the bill of information.[14] There was no evidence introduced to the contrary that S.B. was born in 2005 and was nine years old in 2014 when this crime occurred, supporting the charge and conviction that S.B. was the victim in count three who was sexually abused by Defendant.

Next, Defendant argues that neither of the two incidents S.B. testified to meet the elements of sexual battery. Namely, Defendant asserts that in one incident, Defendant merely observed a sexual battery committed by her husband,

---

[14] The written verdict sheet as to count three also provides that the jury found Defendant guilty as "to the charge of sexual battery of a known juvenile (DOB: 5/27/2005) under 13 years of age."

co-defendant, on S.B., and that in the second incident, S.B. only claimed that Defendant took S.B.'s hand and placed it on co-defendant's penis. Defendant contends that indirect touching is not penalized under the sexual battery statute.

While Defendant accurately asserts that S.B. did not testify regarding any touching by Defendant of S.B.'s anus, genitals, breasts, or buttocks, Defendant is incorrect in her assertion that the forcing of S.B.'s hand onto co-defendant Villafranca's penis does not fulfill the elements of the offense.

The law of principals as set forth in La. R.S. 14:24 provides:

> All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

A rational juror could have found that Defendant participated in the crime of sexual battery, whether directly or indirectly, beyond a reasonable doubt by forcing S.B. to touch co-defendant Villafranca's penis and only stopping once S.B. threatened to tell her mother.[15] (*See State v. Morrison*, 45,620 c/w 45,621 (La. App. 2 Cir. 11/24/10); 55 So.3d 856, where the defendant argued on appeal that the State failed to prove sexual penetration thus requiring reversal of her aggravated rape conviction. The Second Circuit discussed that the evidence present at trial was sufficient to support the defendant's conviction as a principal to the charge of aggravated rape in that she acted in concert with her husband in the sexual abuse of the child. Thus, while the act of penetration occurred during her husband's sexual intercourse with the child, the court found the act occurred with the defendant's voluntary participation; *see also State v. Williams*, 637 So.2d 45, 46 (Fla. Dist. Ct. App. 1994), where a Florida appellate court affirmed the defendant's conviction as a principal for sexual battery with a deadly weapon where he drove while his co-defendant held a gun and forced the victim to perform oral sex on his co-defendant

---

[15] It is noted that the jury was instructed on the law of principals.

and raped her).

In sum, after viewing the evidence in a light most favorable to the State, we find that a rational trier of fact could have found Defendant guilty beyond a reasonable doubt of sexual battery of J.C. and sexual battery of S.B., a juvenile victim who was under the age of 13. Thus, we find there was sufficient evidence to support Defendant's convictions.

Transcript discrepancies

In this assignment, Defendant argues the record is inadequate to properly preserve her right to appellate review. She submits that although a corrected, supplemental copy of the record has been filed, the supplemental record has highlighted a pattern of omissions and material errors that render the transcripts in this case unreliable to support the appeal. Under such circumstances, Defendant avers she has effectively been denied her right to appellate review and is entitled to a new trial.

The State responds that Defendant has failed to show that any alleged discrepancies or omissions in the transcripts have any bearing on the merits of her appeal. The State concludes that none of the issues pertinent to Defendant's appeal are unreviewable based on an alleged incomplete record, and thus, Defendant has failed to establish how she has been prejudiced.

La. Const. Art. I, § 19 provides that no person shall be subjected to imprisonment without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. La. C.Cr.P. art. 843 requires, in all felony cases, the recording of "all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel."

A defendant has a right to a complete transcript of the trial proceedings,

particularly where, as in this case, appellate counsel did not represent defendant at trial. Material omissions from trial court proceedings bearing on the merits of an appeal require reversal; however, a slight inaccuracy in a record or an inconsequential omission that is immaterial to a proper determination of the appeal does not require reversal of a conviction. A defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcript. *State v. Castleberry*, 98-1388 (La. 4/13/99); 758 So.2d 749, 773, *cert. denied*, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999); *State v. Hawkins*, 96-0766 (La. 1/14/97); 688 So.2d 473, 480; *State v. Lampkin*, 12-391 (La. App. 5 Cir. 5/16/13); 119 So.3d 158, 166, *writ denied*, 13-2303 (La. 5/23/14); 140 So.3d 717 (citing *State v. Cheatteam,* 07-272 (La. App. 5 Cir. 5/27/08); 986 So.2d 738, 746). "The materiality of a given omission is measured by the prejudicial effect of the omission on the defendant in accessing the full scope of appellate review." *State v. Pernell*, 13-0180 (La. App. 4 Cir. 10/2/13); 127 So.3d 18, 28, *writ denied*, 13-2547 (La. 4/4/14); 135 So.3d 640.

Here, Defendant filed a motion to supplement the record with a corrected transcript after the original record was lodged, and inaccuracies and omissions were noted. On October 31, 2018, this Court granted Defendant's motion, ordering that the district court supplement the appellate record with the "transcripts as corrected for accuracy, consistency and omissions of the trial proceedings beginning on March 13, 2018- March, 20, 2018." Pursuant to this Court's order, a corrected, supplemental appellate record was filed, rectifying the original inaccuracies.

Defendant contends that while supplementation of the record fixed a few of the omissions, it further highlighted the errors, contradictions and inconsistencies originally present and thus submits that her appeal cannot be reviewed based upon the contradictory and "untrustworthy" record. However, the cases cited by

Defendant do not support her position that discrepancies between an original and corrected record require reversal. In particular, Defendant cites to several cases where convictions have been reversed based upon an incomplete or missing appellate record, which denied the defendants their right to appellate review.[16] Here, the deficiencies Defendant took issue with in the original appellate record have been remedied by the corrected supplement to the appellate record and, thus, Defendant has suffered prejudice as a result. The supplemental record provides the necessary information for a complete review required for Defendant to perfect her appeal. Defendant discusses in great deal the flaws contained in the original appellate record lodged with this Court but fails to identify any specific omissions or inaccuracies in the supplemental appellate record that would preclude the raising of any specific assignment of error that are pertinent to any of the issues raised by Defendant on appeal.

Accordingly, we find that Defendant has not demonstrated or particularized how she has been prejudiced by the filing of the corrected, supplemental appellate transcripts. The supplemented transcripts do not contain any material omissions that would preclude a complete appellate review, nor are the supplemental transcripts so lacking that any of the assignments of error presented on appeal could not be addressed. Therefore, we find that the record is sufficient for a proper appellate review.

---

[16] *See State v. Ford*, 338 So.2d 107, 110 (La. 1976), a second degree murder conviction in which appellate counsel did not serve as trial counsel, and the court reporter failed to record the testimony of four state witnesses, voir dire, and the State's opening statement. The Louisiana Supreme Court held: "[w]ithout a complete record from which a transcript for appeal may be prepared, a defendant's right of appellate review is rendered meaningless"; *State v. Jones*, 351 So.2d 1194 (La. 1977), where the Louisiana Supreme Court found the omission of a portion of the hearing on a motion for change of venue was not an "inconsequential omission" and required reversal because it was impossible to assess the existence of community prejudice or to ascertain whether the evidence supported the defendant's contention that the motion was improvidently denied; *State v. Parker*, 361 So.2d 226 (La. 1978), where reversal was required when the transcript of the closing argument could not be prepared, and defendant assigned as error the State's closing argument; *State v. Murphy*, 13-509 (La. App. 5 Cir. 12/19/13); 131 So.3d 1013, where this Court found the defendant was deprived of his right to appellate review due to a malfunctioning of the court reporter's recording equipment resulting in the omission of portions of the hearing transcript necessary to a review of the defendant's motion to suppress).

18-KA-526                                      22

<u>Ineffective Assistance of Counsel</u>

In her third assignment of error, Defendant argues her counsel was ineffective as it relates to her guilty verdict on count three, which she claims was influenced by the trial court's modified *Allen*[17] charge given without objection. She further maintains that both verdicts violate due process, as they were not unanimous. Accordingly, she concludes a new trial is warranted.

The State responds that the offenses in this case were committed before the change to La. C.Cr.P. art. 782, which now requires unanimous juries, took effect; thus, it maintains that the verdicts in this case were obtained in accordance with the applicable law that previously established that non-unanimous verdicts do not violate the Constitution. The State further avers that Defendant's ineffective assistance of counsel claim lacks merit because the trial judge's alleged *Allen* charge, which instructed the jurors employ "patience and understanding" in hopes of obtaining a verdict, did not rise to the problematic elements found in an *Allen* charge. Thus, the State argues that because defense counsel was not ineffective in failing to object to the charge given, her trial counsel's failure to contemporaneously object to the charge precludes appellate review of this issue under La. C.Cr.P. art. 841.

During jury deliberations, a question was presented to the trial court. The question read: "Sexual battery, Count 3, against Argentina, nine guilty, three not guilty. Do we deliberate until we have ten?" The court noted for the record that, after speaking with counsel, it was agreed that the appropriate response to the question would be "yes," adding that it would instruct the jury that with patience and understanding the court would be grateful if the jury would continue to deliberate in hopes of reaching a verdict. Thus, after agreement by all parties, the jury was brought out and instructed as follows:

---

[17] *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

In order to have a valid verdict on any count including this one, as you are aware, at least ten of you must agree, um, in that regard. Secondly, I would simply add, um, that this is a time when a lot of patients [sic] and understanding is required. Remember that this is a very serious matter and the Court would be grateful if you would continue to Deliberate in hopes of reaching a verdict.

Deliberations continued, and the jury found defendant not guilty on count one and guilty as charged on counts two and three. Defendant now argues her trial counsel was ineffective for failing to object to the court's "modified *Allen* charge," claiming that the trial court's instruction influenced the minority vote on count three. She asserts that the error and prejudice caused by her counsel's failure to object to the erroneous instruction mandates the granting of a new trial.

The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution safeguard a defendant's right to effective assistance of trial counsel. According to the United States Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant asserting an ineffective assistance claim must show: 1) that defense counsel's performance was deficient; and 2) that the deficiency prejudiced the defendant. The defendant has the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. *State v. Taylor*, 04-346 (La. App. 5 Cir. 10/26/04); 887 So.2d 589, 595. When the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. *Id*. Where the record does not

contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under La. C.Cr.P. arts. 924-930.8. *Id.*

Here, the record contains sufficient evidence to rule on the merits of Defendant's claim, and it should be addressed in the interest of judicial economy. Furthermore, after review of the record, we find that defense counsel's performance was not deficient when he failed to object to the alleged modified *Allen* charge given by the trial court to the jury.

The *Allen* charge stems from the United State Supreme Court's decision in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). *State v. Caston*, 561 So.2d 941, 942 (La. App. 2d Cir. 1990). In *Allen*, the court approved of a charge designed to break a jury deadlock and achieve jury unanimity. *Caston*, 561 So.2d at 942; *State v. Eugene*, 866 So.2d at 991 (citing *State v. Collor*, 99-0175 (La. App. 4 Cir. 4/26/00); 762 So.2d 96, 104, *writ denied*, 00-1487 (La. 3/9/01); 786 So.2d 116). The main focus of the original *Allen* charge was that the jury minority, regardless of whether they were for conviction or acquittal, should reconsider the reasonableness of their opinion because it was not shared by a majority of the jury. *Caston*, 561 So.2d at 942.

The Louisiana Supreme Court has banned the use of the *Allen* charge and subsequent modifications of it. *Collor*, 762 So.2d at 104 (citing *State v. Nicholson*, 315 So.2d 639 (La. 1975)). While the supreme court recognized the authority of a trial court to give further instructions to a jury unable to agree upon a verdict, it found the *Allen* charge problematic for two reasons. *Id.* First, the charge emphasized that the jury had a duty to reach a verdict, implying that the trial judge would not accept a mistrial. *Id.* Second, when the duty to reach a verdict is coupled with an admonition by the trial judge that those in the minority should rethink their position, there exists an almost overwhelming pressure to conform to

the majority's view. *Id.* (citing *State v. Campbell*, 606 So.2d 38, 40 (La. App. 4th Cir. 1992)). Therefore, if a trial judge gives an *Allen* charge or any "coercive modification" of same, the trial court will have committed reversible error. *Collor*, 762 So.2d at 104 (citing *Nicholson*, *supra*).

There is no requirement that a judge declare a mistrial at the initial sign of trouble. *State v. Anders*, 06-589 (La. App. 3 Cir. 9/27/06); 941 So.2d 93, 101 (citing *State v. Lowenfield*, 495 So.2d 1245 (La. 1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986)). It is within the discretion of the trial court to urge jurors to come to an agreement. *Anders*, 941 So.2d at 101 (quoting *State v. Governor*, 331 So.2d 443 (La. 1976)).

As evidenced by the record, the trial court's charge regarding further deliberations can be distinguished from the elements that the United States Supreme Court found problematic in *Allen*. First, the instruction did not imply that the trial judge would not accept a mistrial. It is well-settled that utilizing the phrase "I am going to urge you to come to an agreement,"[18] is not palpable abuse. (*Governor*, 331 So.2d at 453 (citing *State v. Rodman*, 208 La. 523, 23 So.2d 204 (1945)); *State v. Seals*, 135 La. 602, 65 So. 756 (1914); *State v. Fuselier*, 51 La.Ann. 1317, 26 So. 264 (1899); *State v. Dudoussat*, 47 La.Ann., 977, 17 So. 685 (1895) ("It is safe to state as a settled proposition that when the Court is informed by a jury that they cannot agree, it is not error for the Court to impress upon them the importance of the case, urge them to come to an agreement, and send them back for further deliberation; for the question of the discharge of the jury because of inability to agree on a verdict is within the sound discretion of the trial judge, and the exercise of that discretion will not be set aside in the absence of palpable abuse." )

---

[18] In this case, the trial court stated, "the Court would be grateful if you would continue to [d]eliberate in hopes of reaching a verdict."

Second, the trial court did not attempt to coerce the jury members holding the minority viewpoint to accept the majority position, rather, the trial court advised the jury that a valid verdict on any count required at least ten jurors to agree and emphasized the importance of patience and understanding given the serious nature of the offense. It is unlikely that the jurors interpreted the judge's request that the jury practice "patience and understanding" in their deliberations in hopes of reaching a verdict as an implication that the court would not accept a mistrial. *Eugene*, 866 So.2d at 991. (*See State v. Wilson*, 01-0625 (La. App. 3 Cir. 12/28/01); 806 So.2d 855, *writ denied*, 02-0323 (La. 9/13/02); 827 So.2d 1121, holding that the charge given by the trial court did not rise to the level of an *Allen* charge or a modified *Allen* charge when the trial court did not imply to the jurors that it would not accept a mistrial or attempt to coerce the jury members holding the minority viewpoint to accept the majority position; *see also Collor*, 762 So.2d at 105, that held "In light of the fact that the jury members had deliberated only one hour when they advised the judge they were deadlocked, and considering the gravity of the offense, the trial judge did not abuse his discretion in requesting that the jury continue their deliberations for another half hour."; *Anders*, 941 So.2d at 101-02, that held, "The trial court's comments merely indicate it felt it was much too soon in deliberations for the jury to conclude that it could not reach a verdict as the jury deliberated for one hour and five minutes before informing the court that it could not reach the required verdict.").

As discussed, the Louisiana Supreme Court has recognized that there will be times when a court may wish to give supplemental instructions after the jury has retired and that the determination of when such supplemental instructions shall be given is in the discretion of the trial court. *Nicholson*, 315 So.2d at 643. However, in cases where the instructions given by the trial court constitute an *Allen* charge or a modified *Allen* charge, the reviewing court shall find reversible error. *See State*

*v. Dabney*, 05-53 (La. App. 5 Cir. 6/28/05); 908 So.2d 60, 67 (holding that where the trial court told the jurors twice that they had a duty to reach a verdict and attempted to coerce the jury members who held the minority viewpoint to accept the majority position, the instruction constituted a modified *Allen* charge); *Campbell*, 606 So.2d at 40 (holding that instruction to jurors in the minority view to strongly consider the position of the majority and that they have a duty to reach a verdict was coercive and required reversal).

Here, the elements of an impermissible *Allen* charge exemplified in *Dabney* and *Campbell*, *supra*, are not present in the instant charge given by the trial court to the jury. Thus, we find that defense counsel's performance was not deficient in failing to object to the charge so as to preserve this issue for review and thus further find Defendant has failed to meet the first prong of *Strickland*, *supra*. Accordingly, Defendant's ineffective assistance of counsel claim lacks merit.

Lastly, Defendant's contention that both verdicts on counts two and three denied her due process of law as they were obtained by a less than unanimous vote is unsupported. After the verdicts were rendered, defense counsel requested the jury be polled. Once the polling slips were tallied, the trial court declared valid verdicts as to each count and each defendant. The court then ordered the polling slips sealed and placed in the record; however, they were not. Accordingly, while the verdicts were declared legal, it is unknown whether they were less than unanimous.

Nevertheless, we find Defendant cannot raise this issue on appeal because the record indicates that Defendant did not raise this issue in the trial court. Defendant did not file any motion challenging the constitutionality of the statutes regarding non-unanimous jury verdicts nor did she object to the jury instruction that ten jurors were required to agree in order to convict her. Moreover, as previously discussed, the record reflects that during deliberations the jury

presented a question to the trial court which read, in pertinent part, "[d]o we deliberate until we have ten?" After discussing the matter with trial counsel, all parties agreed, with no objection, to provide the following response: "[i]n order to have a valid verdict on any count including this one, as you are aware, at least ten of you must agree."

Where a statute is alleged to be unconstitutional, the state attorney general must be served with a copy of the proceeding and given the opportunity to be heard. La. C.C.P. art. 1880. While there is no single procedure for attacking the constitutionality of a statute, the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. *State v. Napoleon*, 12-749 (La. App. 5 Cir. 5/16/13); 119 So.3d 238, 245. A constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court below. *State v. Hatton*, 07-2377 (La. 7/1/08); 985 So.2d 709, 718. As such, we find Defendant cannot raise this issue on appeal.[19]

Excessive Sentences

In her final assignment, Defendant states that while she was sentenced to a maximum sentence of ten years imprisonment on count two, and a minimum sentence of 25 years imprisonment on count three, the compounding of the sentences by ordering they be served consecutive render them excessive under the circumstances of this case and this offender. She also claims the trial court mistakenly found no mitigating factors in violation of La. C.Cr.P. art. 894.1, despite Defendant's lack of criminal history, and lack of injury, weapons, or force

---

[19] Nonetheless, the language of La. Act. 2018, No. 722, § 1, effective December 12, 2018, and La. Act 2018, No. 493, § 1, effective January 1, 2019, amending La. Const. art. 1, § 17(A) and La. C.Cr.P. art. 782(A), respectively, are clear that the amendment requiring unanimous jury verdicts for crimes whose punishment is necessarily confinement at hard labor applies only in those cases where the offenses are committed on or after January 1, 2019. Before the amendment, and at the time of the instant offenses, the constitutionality of non-unanimous jury verdicts was upheld in both *State v. Bertrand*, 08-2215 and 08-2311 (La. 3/17/09); 6 So.3d 738 and *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). As an intermediate court, this Court is bound by that precedent. *State v. Williams*, 18-112 (La. App. 5 Cir. 11/7/18); 259 So.3d 563, 580, *writ denied*, 18-2038 (La. 4/22/19); 268 So.3d 295.

18-KA-526                                             29

used in the commission of the alleged offenses. Defendant further contends the trial court failed to articulate a basis for overriding the presumption of concurrent sentences provided in La. C.Cr.P. art. 883. She avers that there was no basis for the imposition of consecutive sentences as the offenses were related as further set forth in the bill of information.

The State argues that Defendant's sentences are not constitutionally excessive and were properly ordered to be served consecutively, having been committed against two separate juvenile victims. Accordingly, the State concludes the trial court did not abuse its broad sentencing discretion in imposing the sentences in this case.

The record in this case reflects that Defendant objected to her sentences after imposition on April 16, 2018, as "being unconstitutionally harsh." Then, on May 14, 2018,[20] Defendant filed a *pro se* Motion for Modification and/or Amendment of Sentence under La. C.Cr.P. art. 881(B)(1) requesting that after completion of certain programs her sentences be considered for modification/amendment so that they may be served concurrently with one another since she is "unable to receive Good Time." At the conclusion of her motion, Defendant implored the trial court to modify her sentences and entertain her mitigating factors "that should have been considered at sentencing." The trial court denied Defendant's *pro se* motion on May 22, 2018, finding that it had been divested of jurisdiction upon the ordering of appeal, which was granted on April 17, 2018.[21]

Defendant's *pro se* motion filed pursuant to La. C.Cr.P. art. 881(B) does not constitute a motion for reconsideration of sentence pursuant to La. C.Cr.P. art. 881.1. Thus, Defendant did not file a motion for reconsideration of sentence or

_____

[20] Defendant's *pro se* motion for modification and/or amendment of sentence is stamped as filed May 18, 2018.
[21] La. C.Cr.P. art. 881(A) provides that although a sentence imposed is legal in every respect, the court may amend or change the sentence, within the legal limits of its discretion, prior to the beginning of execution of sentence.

specifically object at the time of sentencing to the sentences imposed based upon their consecutive nature or argue the sentences were excessive due to the trial court's failure to consider mitigating factors under La. C.Cr.P. art. 894.1.[22]

In the past, this Court has held that when the consecutive nature of sentences or the specific grounds for objection to the sentences, including alleged non-compliance with La. C.Cr.P. art. 894.1 are not specifically raised in the trial court, then these issues are not included in the bare review for unconstitutional excessiveness, and the defendant is precluded from raising these issues on appeal. *See State v. Brown*, 15-96 (La. App. 5 Cir. 9/15/15); 173 So.3d 1262, 1269, *writ denied*, 15-1872 (La. 10/10/16); 207 So.3d 403; *State v. Escobar-Rivera*, 11-496 (La. App. 5 Cir. 1/24/12); 90 So.3d 1, 8, *writ denied*, 12-0409 (La. 5/25/12); 90 So.3d 411; *See also State v. Williams*, 10-265 (La. App. 5 Cir. 11/9/10); 54 So.3d 98, 103; *State v. Collins*, 09-283 (La. App. 5 Cir. 12/8/09); 30 So.3d 72, 86, *writ denied*, 10-0034 (La. 9/3/10); 44 So.3d 696; *State v. Lemon*, 06-721 (La. App. 5 Cir. 1/30/07); 951 So.2d 1177. Defendant is therefore not entitled to review of the consecutive nature of her sentences or whether the trial court complied with La. C.Cr.P. art. 894.1, in this appeal and is consequently limited to a bare review of her sentences for unconstitutional excessiveness. *State v. Hills*, 03-716 (La. App. 5 Cir. 12/9/03); 866 So.2d 278, 286, *writ denied*, 04-1322 (La. 4/22/05); 899 So.2d 569; *See also Escobar-Rivera*, 90 So.3d at 8.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or

---

[22] La. C.Cr.P. art. 894.1(C) requires the trial judge to state for the record the considerations taken into account and the factual basis when imposing the sentence. However, when there is an adequate factual basis for the sentence contained in the record, the trial court's failure to articulate every circumstance listed in La. C.Cr.P. art. 894.1 does not require a remand for resentencing. *State v. Hearn*, 09-434 (La. App. 5 Cir. 12/29/09); 30 So.3d 873, 876. Further, there is no requirement that specific matters be given any particular weight at sentencing. *State v. Bolden*, 04-1000 (La. App. 5 Cir. 3/1/05); 901 So.2d 445, 448, *writ denied*, 05-2030 (La. 4/28/06); 927 So.2d 279.

imposes needless and purposeless pain and suffering. *State v. Horne*, 11-204 (La. App. 5 Cir. 2/14/12); 88 So.3d 562, 569, *writ denied*, 12-0556 (La. 6/1/12); 90 So.3d 437; *State v. Wickem*, 99-1261 (La. App. 5 Cir. 4/12/00); 759 So.2d 961, 968, *writ denied*, 00-1371 (La. 2/16/01); 785 So.2d 839. The trial judge is afforded broad discretion in sentencing, and a reviewing court may not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); *State v. Berry*, 08-151 (La. App. 5 Cir. 6/19/08); 989 So.2d 120, 131, *writ denied*, 08-1660 (La. 4/3/09); 6 So.3d 767; *State v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07); 975 So.2d 646, 656.

In reviewing a sentence for excessiveness, an appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. *State v. Lobato*, 603 So.2d 739, 751 (La. 1992). On review, an appellate court does not determine whether another sentence might have been more appropriate but whether the trial court abused its discretion. *Pearson*, 975 So.2d at 656; *Horne*, 88 So.3d at 569. In considering whether the trial court abused its discretion in sentencing a defendant, a reviewing court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes by other courts. *Horne*, 88 So.3d at 569.

Upon review of the record in this case, we find that Defendant's sentence on count three is not unconstitutionally excessive. At sentencing, the trial court stated that it had taken into consideration the relevant provisions of La. C.Cr.P. art. 894.1, the testimony adduced at trial, and the seriousness of the offenses. The court further noted the sentences were to be served consecutively to each other because there were "two separate victims and two separate incident dates." The court believed that to "do otherwise would diminish the seriousness of the offense as to

each victim."[23]

Defendant was sentenced to 25 years imprisonment without benefit of probation, parole, or suspension of sentence, on count three, sexual battery of a juvenile under the age of 13, the minimum sentence the trial court could have imposed under La. R.S. 14:43.1, which provides for a sentencing range of 25 to 99 years imprisonment with at least 25 years to be served without benefit of probation, parole, or suspension of sentence. *See* La. R.S. 14:43.1(C)(2).

When considering the nature and background of defendant it appears she is a first-time felony offender; however, the record reflects that the nature of the crimes she committed against two separate juvenile victims at different times from 2013 to 2014 are egregious. The testimony at trial established that while in her care, she and her husband exploited their positions of trust to commit unthinkable acts of sexual abuse against a 13-year-old girl and a nine-year-old girl.

The first victim, J.C., testified that after co-defendant Villafranca served her alcohol, he forced her into his bedroom, pushed her onto the bed and vaginally raped her. She testified that when it was over, Defendant came into the bedroom and started touching J.C.'s legs and then digitally penetrated J.C.'s vagina, telling J.C. that she liked it, and "needed to learn." And the second victim, S.B., testified that while sleeping at Defendant's house, she woke up to find co-defendant Villafranca touching her vagina. She recalled that Defendant walked into the room and saw what was going on but did nothing to stop it; instead, Defendant told S.B. "stop trying to stop it because you are going to have to do it anyway when you get older." S.B. further testified regarding another occasion when Defendant grabbed her hand and made her touch her co-defendant Villafranca's penis. The record further established Defendant and co-defendant Villafranca threatened harm to

---

[23] The trial court also listened to victim impact statements from D.V's mother and S.B.'s mother. During their statements they expressed the trust they had put in Defendant and co-defendant and how the crimes committed against their daughters have destroyed their lives.

each of the victims and/or their family members if they told anyone what had happened.

Lastly, the same or harsher sentences have been imposed for similar crimes by this Court and other courts and have been upheld as constitutional with respect to the crime of sexual battery of a juvenile under the age of 13.

In *State v. Junek*, 12-0865 (La. App. 1 Cir. 12/21/12); 2012 WL 6681854 (unpublished opinion), the defendant was convicted of sexual battery of a juvenile under thirteen years old and was sentenced to the minimum of 25 years at hard labor without benefit of probation, parole, or suspension of sentence. The facts at trial established that the defendant, who was approximately 20 years old at the time of the offense, was dating and living with the victim's aunt. One night while the victim and her sister were at their trailer watching television, the victim's aunt left the room, leaving the defendant alone with the two girls. The defendant made the victim, who was approximately seven at the time of the offense, touch his penis. The appellate court reviewed the record and found that it supported the sentence imposed. Based on its review, the appellate court could not say that the district court abused its discretion in imposing the statutory minimum sentence.

Similarly, in *State v. Sims*, 11-1876 (La. App. 1 Cir. 5/2/12); 2012 WL 1552048 (unpublished opinion), the defendant was convicted of sexual battery of a juvenile under the age of 13 and sentenced to the minimum of 25 years at hard labor without benefit of parole. On appeal, the defendant contended the trial court imposed a constitutionally excessive sentence, arguing he was convicted of the momentary, one-time touching of the victim, and there was no evidence he threatened her or that she needed counseling to recover from the offense. He also argued he had no prior criminal record. The facts at trial showed that the victim and her siblings were living with their mother and her boyfriend, the defendant, at the time of the incident. The victim, who was approximately eleven at the time of

the offense, testified that the defendant came into her room and touched her on her private parts on her skin and indicated he touched her in the "front" and in the "back." In imposing sentence, the trial court noted the defendant had no prior criminal record but found him to be in need of correctional treatment or a custodial environment that could be provided most effectively by his commitment to an institution. The appellate court found that a thorough review of the record revealed the sentence imposed was not grossly disproportionate to the severity of the offense and, thus, was not unconstitutionally excessive.

In *State v. Redfearn*, 44,709 (La. App. 2 Cir. 9/23/09); 22 So.3d 1078, 1087, *writ denied*, 09-2206 (La. 4/9/10); 31 So.3d 381, the defendant argued that his sentence of 40 years for his conviction of sexual battery and 30 years for his conviction of aggravated incest were excessive because he had no prior record, other than a DWI. Prior to sentencing, the trial court reviewed a presentence investigation, took into account the defendant's social and personal history, considered his lack of remorse and violation of the children's trust, as well as considered mitigating factors such as the lack of criminal history. The court found that the offenses were so egregious that a severe sentence would not be excessive. The court found that the 40-year sentence imposed for sexual battery, while unquestionably harsh, was less than half the maximum sentence. The court further determined that the trial court adequately considered and articulated appropriate sentencing factors, and considering the heinous nature of the case, the sentences did not shock the sense of justice and therefore were not excessive.

In *State v. Lilly*, 12-0008 (La. App. 1 Cir. 9/21/12); 111 So.3d 45, *writ denied*, 12-2277 (La. 5/31/13); 118 So.3d 386, the defendant was convicted of sexual battery in violation of La. R.S. 14:43.1(C)(2) and was sentenced to 35 years at hard labor without benefit of parole. The victim, who was four years old at the time of the incident, testified that the defendant touched her on her vagina while he

was babysitting.  On appeal, the defendant argued that the sentence was excessive for a 57-year-old first-felony offender where the State, at most, showed a fingertip touching of the victim's vaginal area.  The appellate court upheld the sentence, noting that the victim's age made her particularly vulnerable and that the defendant was in a position of trust.

In *State v. Greenberry*, 14-335 (La. App. 4 Cir. 11/19/14); 154 So.3d 700, *writ denied*, 14-2656 (La. 10/9/15); 178 So.3d 1000, the Fourth Circuit affirmed a conviction and sentence where the defendant was convicted of sexual battery in violation of La. R.S. 14:43.1(C)(2) and was sentenced to 45 years at hard labor, with the first 25 years to be served without benefit of parole.  The evidence showed that the defendant committed sexual battery of his live-in girlfriend's 10-year-old daughter by inserting his finger into the victim's vagina.  The victim also testified that the defendant performed oral sex on her.

In *State v. Evans*, 48,471 (La. App. 2 Cir. 12/18/13); 130 So.3d 965, the defendant was convicted of the sexual battery of his six-year-old daughter in violation of La. R.S. 14:43.1 and was sentenced to 50 years at hard labor, with 25 years of the sentence to be served without the benefit of parole.  The victim stated that the defendant touched her private area with his hands and his "thing" and that the defendant also stuck his "thing" in her mouth.  The appellate court found that the sentence was not excessive, noting that the defendant was the victim's father, showed no remorse for his crime, and had two previous felony convictions for offenses against small children.

Also, in *State v. Pontiff*, 14-1049 (La. App. 3 Cir. 5/6/15); 166 So.3d 1120, *writ denied*, 15-1107 (La. 10/28/16); 209 So.3d 94, the defendant was convicted of sexual battery in violation of La. R.S. 14:43.1 and was sentenced to 30 years at hard labor.  The evidence showed that the defendant made the victim "rub his private."  The victim was eight years old at the time of the offense.  The appellate

court found that the sentence was not excessive.

Moreover, while Defendant here received the minimum allowable sentence on her conviction for sexual battery of a juvenile under the age of 13, the "jurisprudence indicates that maximum, or nearly maximum terms of imprisonment may not be excessive when the defendant has exploited a position of trust to commit sexual battery or indecent behavior with a juvenile." *State v. Badeaux*, 01-406 (La. App. 5 Cir. 9/25/01); 798 So.2d 234, 239, *writ denied*, 01-2965 (La. 10/14/02); 827 So.2d 414. Here, not only did Defendant exploit a position of trust as the babysitter to these victims which enabled her to commit the sexual batteries in this case, she also encouraged and supported those acts of abuse committed by co-defendant—her husband—and refused to intervene when asked for help by these innocent victims.

Based on the foregoing, we find the record supports the sentence imposed on Defendant's conviction for sexual battery of a juvenile under the age of 13. Accordingly, we conclude the trial court did not abuse its wide discretion in imposing the 25-year sentence in this case as it is not grossly disproportionate to the severity of the crime.[24]

Errors Patent Discussion

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

The record does not reflect that Defendant was notified of Louisiana's sex offender registration requirements pursuant to La. R.S. 15:540 *et seq*. Defendant's convictions for sexual battery and sexual battery of a juvenile under the age of 13 (La. R.S. 14:43.1) are defined as sex offenses by La. R.S. 15:541(24).

La. R.S. 15:543(A) states that the trial court "shall provide written

---

[24] Defendant's sentence on count two will be reviewed in the "Errors Patent Discussion."

notification to any person convicted of a sex offense and a criminal offense against a victim who is a minor of the registration requirements and the notification requirements" of La. R.S. 15:542 and La. R.S. 15:542.1. In addition, La. R.S. 15:543(A) states that the trial court shall use the form contained in La. R.S. 15:543.1 to inform the defendant of the registration and notification requirements. La. R.S. 15:543(A) further requires that such notice be included on any guilty plea forms and judgment and sentence forms provided to the defendant and that an entry be made in the court minutes stating that written notification was provided.

Here, the record indicates that the trial court did not comply with La. R.S. 15:543(A). A trial court's failure to provide this notification constitutes an error patent and warrants a remand for written notification. *See State v. Raye*, *supra*; *Lampkin*, 119 So.3d at 168 (citing *State v. Pierce*, 11-320 (La. App. 5 Cir. 12/29/11); 80 So.3d 1267, 1279-80).

Accordingly, we remand this matter to the trial court for the purpose of providing Defendant with the appropriate written notice of her sex offender notification and registration requirements, using the form contained in La. R.S. 15:543.1.

Next, the Louisiana Uniform Commitment Order (UCO) incorrectly reflects the dates of the offenses on counts one, two, and three as November 1, 2013. However, the record reflects that counts one and two occurred on or between November 1, 2013 and November 30, 2013, and count three occurred on or between August 1, 2014 and August 30, 2014. This Court has previously remanded a case for correction of the UCO in its error patent review. *See State v. Lyons*, 13-564 (La. App. 5 Cir. 1/31/14); 134 So.3d 36, *writ denied*, 14-0481 (La. 11/7/14), 152 So.3d 170 (citing *State v. Long*, 12-184 (La. App. 5 Cir. 12/11/12); 106 So.3d 1136, 1142). Accordingly, we remand the matter for correction of the UCO to accurately reflect the date ranges of the offenses. We also direct the Clerk

of Court for the 24th Judicial District Court to transmit the original of the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. *See State v. Doucet*, 17-200 (La. App. 5 Cir. 12/27/17); 237 So.3d 598, *writs denied*, 18-0077 (La. 10/8/18); 253 So.3d 789 and 18-0196 (La. 11/5/18); 255 So.3d 1052.

Lastly, the trial court failed to state on the record at sentencing whether Defendant's sentence on count two, sexual battery of a juvenile, was to be served at hard labor.[25] La. R.S. 14:43.1(C)(1) provides that "[w]hoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years."

La. C.Cr.P. art. 879 requires a court to impose a determinate sentence. If the applicable sentencing statute allows discretion, the failure to indicate whether the sentence is to be served at "hard labor" is an impermissible indeterminate sentence. *State v. Joseph*, 16-191 (La. App. 5 Cir. 12/7/16); 205 So.3d 1013, *writ denied*, 17-299 (La. 11/17/17); 230 So.3d 216; *State v. Norman*, 05-794 (La. App. 5 Cir. 3/14/06); 926 So.2d 657, 661, *writ denied*, 06-1366 (La. 1/12/07); 948 So.2d 145. Here, because the applicable sentencing statute allows discretion, we find Defendant's sentence on count two is indeterminate, vacate Defendant's sentence, and remand the matter to the trial court for the imposition of a determinate sentence on count two in accordance with La. C.Cr.P. art. 879. *State v. Dixon*, 17-422 (La. App. 5 Cir. 3/14/18); 241 So.3d 514, 524-25, *writ denied*, 18-0542 (La. 2/11/19); 263 So.3d 415.

## DECREE

For the foregoing reasons, we affirm Defendant's convictions and sentence

---

[25] While the sentencing minute entry reflects the term of the sentence on count two is to be served at hard labor, the transcript does not. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

on count three.  We vacate the sentence on count two and remand the matter to the

trial court for resentencing.  Additionally, we instruct the trial court to properly

inform Defendant of the sex offender notification requirements.

**<u>CONVICTIONS AFFIRMED;</u>**
**<u>SENTENCE ON COUNT THREE AFFIRMED;</u>**
**<u>SENTENCE ON COUNT TWO VACATED;</u>**
**<u>REMANDED FOR RESENTENCING</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 27, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**18-KA-526**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
TERRY M. BOUDREAUX (APPELLEE)          SHERRY A. WATTERS (APPELLANT)          COLIN CLARK (APPELLEE)
J. TAYLOR GRAY (APPELLEE)              GRANT L. WILLIS (APPELLEE)             THOMAS J. BUTLER (APPELLEE)

**MAILED**
HON. JEFFREY M. LANDRY (APPELLEE)      ANNE M. WALLIS (APPELLEE)
ATTORNEY GENERAL                       HON. PAUL D. CONNICK, JR. (APPELLEE)
LOUISIANA DEPARTMENT OF JUSTICE        EMILY E. BOOTH (APPELLEE)
1885 NORTH 3RD STREET                  LAURA S. SCHNEIDAU (APPELLEE)
6TH FLOOR, LIVINGSTON BUILDING         ASSISTANT DISTRICT ATTORNEYS
BATON ROUGE, LA 70802                  TWENTY-FOURTH JUDICIAL DISTRICT
                                       200 DERBIGNY STREET
                                       GRETNA, LA 70053